United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 25, 2006**

**Charles R. Fulbruge III**
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 04-31139

Water Craft Management LLC,
Douglas Wayne Glascock,
Nick A. Martrain,

Plaintiffs-Appellants-Cross-Appellees,

versus

Mercury Marine, Etc, et al,

Defendants,

Mercury Marine, A division
of Brunswick Corp.,

Defendant-Appellee-Cross-Appellant.

Appeals from the United States District Court
for the Middle District of Louisiana

Before GARWOOD, DAVIS and GARZA, Circuit Judges.

GARWOOD, Circuit Judge:

Appellants, Water Craft Management LLC, d/b/a LA Boating Centre (Water Craft) and its members Douglas Wayne Glascock and Nick A. Martrain, sued appellee Mercury Marine alleging, *inter alia*, secondary-line price discrimination in violation of sections 2(a) and 4 of the Clayton Act, as amended by the Robinson-Patman

Act, 15 U.S.C. 13(a), 15 (1936).  Following a bench trial, the district court entered judgment in favor of Mercury on their Robinson-Patman Act claim.[1]  We affirm.

## FACTS AND PROCEEDINGS BELOW

Water Craft was a Mercury Marine retail dealership selling Mercury Marine outboard motors in Baton Rouge, Louisiana.  It was founded on November 25, 1996, by its two members, Nick Martrain and Douglas Glascock, and went out of business roughly two years later, on December 7, 1998.  Water Craft then filed this suit against one of its suppliers, Mercury Marine, for secondary-line price discrimination[2] in violation of sections 2(a) and 4 of the Clayton

---

[1]In the district court the suit included several other claims and counter-claims which are not properly before this court, including state-law claims for breach of contract, detrimental reliance, fraud, and misrepresentation and five counter-claims for unpaid accounts.  The district court bifurcated these claims, ruling only on liability and reserving the damages question for a later trial.  Then, citing Rule 54(b), the district court purported to certify for appeal its ruling on liability.  Because Rule 54(b) permits the certification of *final judgments* only, we ruled ineffective the certification and ordered dismissed all appeals and cross-appeals relating to the state law claims.  *See* Order of April 28, 2006, *as modified by* Order of May 2, 2006.  These state-law claims remain pending before the district court; only the Robinson-Patman Act claim is before us on this appeal.  *Sidag Aktiengesellschaft v. Smoked Foods Products Co., Inc.*, 813 F.2d 81, 84 (5th Cir. 1987); *see also* Wright and Miller § 2656.

[2]In price discrimination cases, courts analyze the competitive injury component at three basic levels: (1) primary-line effects, *i.e.* injury to other sellers; (2) secondary-line effects, *i.e.* injury to purchasers of a certain seller; and (3) tertiary-line effects, *i.e.* injury to the customers of those purchasers.  A secondary-line violation occurs when a large purchaser uses its purchasing power to obtain lower

Act, as amended by the Robinson-Patman Act, 15 U.S.C. §§ 13(a), 15 (1936). Section 2(a) provides, in pertinent part, as follows:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality . . . where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them . . . .

15 U.S.C. § 13(a).

Water Craft alleges that Mercury Marine discriminated in favor of Water Craft's largest competitor, Travis Boating Center ("Travis"), by offering Travis discounts on motors that far exceeded the discounts available to Water Craft or other Mercury retail dealerships in the Baton Rouge market. Mercury does not dispute the fact that Travis got a better deal on motors than Water Craft, but Mercury explains that it was forced to offer these lower prices to Travis in order to compete with the Outboard Marine Corporation ("OMC"),[3] one of Mercury's principal competitors.

Before Mercury began selling motors to Travis, Mercury was losing market share to OMC in the gulf coast region because the

---

prices from a manufacturer, allowing it to undersell its competitors. *Eximco, Inc. v. Trane*, 737 F.2d 505, 515 (5th Cir.1984).

[3]At the time, OMC manufactured Johnson and Evinrude outboard motors.

Travis chain, which until October of 1998 had a sales agreement with OMC but not with Mercury, was rapidly expanding, sometimes buying out Mercury dealerships and converting them to Travis retail stores which did not sell Mercury products. During his testimony at trial, Jeffery Behan, a marketing research director at Mercury, explained that Mercury approached Travis several times in an effort to sign them up, but was rebuffed because their prices were not competitive with OMC's.

With this explanation for its price discrimination, Mercury invoked the "meeting competition defense," an affirmative defense provided under section 2(b) of the Robinson-Patman Act that permits a seller to rebut a *prima facie* case of discrimination by "showing that his lower price . . . was made in good faith to meet an equally low price of a competitor . . . ." 15 U.S.C.A. § 13(b)[4]

The district court, after a bench trial, agreed that the meeting competition defense applies and entered judgment in favor

---

[4]Section 2(b) provides that "[u]pon proof being made, at any hearing on a complaint under this section, that there has been discrimination in price or services or facilities furnished, the burden of rebutting the prima-facie case thus made by showing justification shall be upon the person charged with a violation of this section, and unless justification shall be affirmatively shown, the Commission is authorized to issue an order terminating the discrimination: *Provided, however*, That nothing herein contained shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor." 15 U.S.C.A. § 13(b).

of Mercury, finding, *inter alia*,[5] that "Mercury has proved the required elements of the meeting competition defense by more than a preponderance of the evidence." Water Craft appeals from that judgment.

### DISCUSSION

Water Craft argues that the district court erred in applying the meeting competition defense for two reasons. First, in their brief to this court, Water Craft challenges the district court's factual finding that Mercury's price discrimination was a good faith response to OMC's lower prices. Second, in a theory not advanced until oral argument, Water Craft challenges the district court's legal determination that the meeting competition defense applies even though Mercury fell short of actually meeting OMC's low prices.

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed *de novo*." *In re Mid-South Towing Co.*, 418 F.3d 526, 531 (5th Cir. 2005). Clear error exists if (1) the findings are without substantial evidence to support them, (2) the court misapprehended the effect of the evidence, and (3) although there is evidence which if credible would be substantial, the force and effect of the

---

[5]The district court also ruled that Water Craft had failed to prove its prima facie case under § 2(a), but because we affirm on the basis of the meeting competition defense, we need not address these other rulings.

testimony, considered as a whole, convinces the court that the findings are so against the preponderance of credible testimony that they do not reflect or represent the truth and right of the case. *Moorhead v. Mitsubishi Aircraft Int'l, Inc.*, 828 F.2d 278, 283 (5th Cir. 1987). Reversal for clear error is warranted only if the court has "a definite and firm conviction that a mistake has been committed." *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 375 (5th Cir. 2000).

We find Water Craft's first argument unpersuasive and hold that the district court did not clearly err in finding that Mercury's lower pricing to Travis was made in a good faith attempt to meet OMC's prices. The Robinson-Patman Act was passed in response to the rapid growth of chain stores, which, by exploiting the efficiencies of centralization, were able to threaten the existence of small, independent retailers. *Great Atlantic & Pacific Tea Co.*, Inc. v. F. T. C., 99 S.Ct. 925, 930-31 (1979); *see also* S.Res. 224, 70th Cong., 1st Sess. (directing the Federal Trade Commission to investigate and report to it on chain-store operators); RICHARD A. POSNER, THE ROBINSON-PATMAN ACT 26 (calling the Act "the high-water mark of the anti-chain-store movement"). However, "Congress did not seek by the Robinson-Patman Act either to abolish competition or so radically to curtail it that a seller would have no substantial right of self-defense against a price raid by a competitor." *Standard Oil Co. v. FTC*, 71 S.Ct. 240, 249 (1951).

6

To this end, as noted above, it is an absolute defense to liability under the Robinson-Patman act that the price discrimination is the result of price concessions made "in good faith *for the purpose* of meeting the competitor's price." *Falls City Industries, Inc. v. Vanco Beverage Inc.*, 103 S.Ct. 1282, 1291 (1983); *Federal Trade Commission v. Sun Oil Company*, 83 S.Ct. 358 (1963).

Our focus, then, is on Mercury's motivation for discriminating, since "[a] good-faith belief, rather than absolute certainty, that a price concession is being offered to meet an equally low price offered by a competitor is sufficient to satisfy the § 2(b) defense." *United States v. United States Gypsum* Co., 98 S.Ct. 2864, 2881 (1978). Furthermore, the Court has emphasized that the concept of good faith, which is at the heart of the meeting competition defense, is "flexible and pragmatic, not technical or doctrinaire." *Id.* at 2864. Indeed, "[r]igid rules and inflexible absolutes are especially inappropriate in dealing with the § 2(b) defense; the facts and circumstances of the particular case; not abstract theories or remote conjectures, should govern its interpretation and application." *Id.*

Some guidelines, however, do emerge from the Supreme Court opinions. In *United States Gypsum*, for example, the Court sustained a meeting competition defense, holding that although "casual reliance on uncorroborated reports of buyers or sales representatives without further investigation may not . . . be

7

sufficient to make the requisite showing of good faith," the defense "can be satisfied by efforts falling short of interseller verification . . . ." *Id.* at 2881-82. The Court then identified certain indicia of good faith that are relevant to determining whether the meeting competition defense should apply; among these are (1) whether the seller "had received reports of similar discounts from other customers"; (2) whether the seller "was threatened with a termination of purchases if the discount were not met"; (3) whether the seller made "[e]fforts to corroborate the reported discount by seeking documentary evidence or by appraising its reasonableness in terms of available market data"; and (4) whether the seller had "past experience with the particular buyer in question." *United States Gypsum Co.*, 98 S.Ct. at 2882.

The Court applied this good-faith checklist one year later in *Great Atlantic & Pacific Tea Co.*, *supra*, holding that a seller, Borden, was entitled to the meeting competition defense, and that the buyer, A&P, who faced derivative liability under the Act for having demanded a discriminatorily low price, was also so entitled. In that case, after Borden submitted its first bid to A&P, a long-standing customer, the A&P buyer responded, "I have a [competing] bid in my pocket. You [Borden] people are so far out of line it is not even funny." *Id.,* 99 S.Ct. at 929. The A&P buyer then warned Borden that it was in danger of losing its business in the Chicago area unless Borden came up with a better offer. When Borden asked

8

A&P for details about the competing offer, it was refused. Even though Borden's eventual winning offer was actually *below* the competing offer, the Court ruled that Borden had adequately established its good faith. First, the Court noted, "the source of the information was a person . . . who had personal knowledge of the competing bid." *Id.*, 99 S.Ct. at 935 n.17. Second, "Borden attempted to investigate by asking A&P for more information about the competing bid." *Id.* Finally, "Borden was faced with a credible threat of a termination of purchases by A&P if it did not make a second offer." *Id.*

Later in *Falls City*, the Court again sustained a meeting competition defense, observing that "the defense requires that . . . the lower price must actually have been a good-faith response to that competing low price." *Id.,* 103 S.Ct. at 1291. The *Falls City* Court then addressed a matter relevant here, holding that "section 2(b) . . . does not distinguish between one who meets a competitor's lower price to retain an old customer and one who meets a competitor's lower price in an attempt to gain new customers." *Id.* at 1294.

Under the circumstances of this case, Mercury has shown the existence of facts, particularly those facts which the Court has listed as indicia of good faith, "which would lead a reasonable and prudent person to believe that the granting of a lower price would in fact meet the equally low price of a competitor." *Great Atlantic*

9

*& Pacific Tea Co.,* 99 S.Ct. at 934. First, Mercury relied on several different sources for their approximation of OMC's discounts, including Ron Spradling and Mark Walton, both of whom had personal knowledge of the competing bid and neither of whose credibility had been questioned. Then, as a Mercury Marketing director explained at trial, Mercury attempted to corroborate their information:

> "[W]e kind of looked at what the boat pricing was out in the marketplace, and some people started to do some math there, and we listened to what you heard at boat shows and other people that tended to talk about what they thought they knew, a lot of that information triangulated pretty closely."

We agree with the district court's finding that such information forms a sufficient basis on which Mercury could have acted in good faith. Indeed, its is doubtful that Mercury could have investigated any further without exposing themselves to risk of liability under section 1 of the Sherman Act.[6]

As further evidence of good faith, the Supreme Court has previously considered whether the seller "was threatened with a termination of purchases if the discount were not met." *See United States Gypsum Co.,* 98 S.Ct. at 2882. Such a consideration is not

---

[6]The Court has held that the exchange of price information by competitors violates the Sherman Act. *United States v. Container Corp.,* 89 S.Ct. 510 (1969), and has often explained that this risk of liability circumscribes the efforts which a seller may undertake to verify a competing offer. *See e.g., United States Gypsum Co.,* 98 S.Ct. at 2884.

directly relevant here, since the immediate focus of Mercury's effort was to win a new customer rather than keep an old one; however, the logic underlying this consideration still applies. It is clear from trial testimony that Travis repeatedly *refused* Mercury's advances and favorable price offerings until an agreement was finally reached in October of 1998. Like the scenario where a seller loses existing business, this refusal indicates that the final lower price was necessary to compete, not a predatory attempt to undermine competition.

Faced with this evidence of good faith, Water Craft then advances a more subtle claim, contending that Mercury's discriminatory discount was offered not for "pricing reasons" (*i.e.* to respond to OMC's lower price) but for "marketing reasons" (*i.e.* to win Travis's business and thus participate in their rapid growth).

We find no substantial evidence that supports such a claim by Water Craft. Although there is trial testimony suggesting that the reason Mercury pursued Travis in the first place was to protect Mercury's gulf coast market, this fact does not suggest that those same marketing concerns led Mercury to offer Travis — and only Travis — a substantial discount. Instead, the evidence suggests, and the district court found, that Mercury's decision to offer especially low prices to Travis was driven entirely by price negotiations in which Travis, like any savvy buyer, used its OMC

11

price schedule to extract deep discounts from Mercury. Accordingly, we hold that the district court did not clearly err in finding that Mercury's price discrimination was a good faith response to OMC's lower price.

Water Craft advanced a second theory at oral argument, contending that, as a matter of law, Mercury's discrimination didn't "meet" the competition because Mercury's final discriminatory price was not as low as OMC's price. For this proposition, Water Craft cites *Falls City*, in which the Court explains that "a seller's response must be defensive, in the sense that the lower price must be calculated and offered in good faith to 'meet not beat' the competitor's low price." *Falls City*, 103 S.Ct. at 1294. From this statement, they extrapolate to the counter intuitive conclusion that the discriminatory price also must "meet not exceed," the competitor's low price.

This strained reading of *Falls City* aside, there is no support for Water Craft's novel theory in the case law, and, in fact, there is language which implies otherwise. First, we note that it is the seller's *intent to meet* a competitor's price, not the actual correspondence between prices, that triggers the meeting competition defense. In *Great Atlantic & Pacific Tea*, for example, the Court held that "[s]ince good faith, rather than absolute certainty, is the touchstone of the meeting-competition defense, a seller can assert the defense even if it has unknowingly made a bid

that in fact not only met but beat his competition." *Great Atlantic & Pacific Tea Co.*, 99 S.Ct. at 934; *see also* United States Gypsum Co., 98 S.Ct. at 2884 n.32 ("The good-faith requirement of the § 2(b) defense implicitly suggests a somewhat imperfect matching between competing offers actually made and those allowed to be met.").

Furthermore, we hold that the meeting competition defense applies even in a case such as this one, where the seller knew that its discriminatory price was not as low as its competitor's price, yet nevertheless offered that discriminatory price in a good faith response to the competition. The Court's recent statement of the meeting competition defense implicitly supports this position, holding that "under the circumstances it was reasonable to believe that the quoted price *or a lower one* was available to the favored purchaser or purchasers from the seller's competitors." *Falls City*, 103 S.Ct. at 1290 (emphasis added).

Indeed, Water Craft's argument in this respect in essence attributes an irrational intent to Congress. Plainly, a principle intent of the Robinson-Patman Act was to protect small retailers against the price favoritism which the manufacturers of the products they sold might show to the large retailers with whom they competed. Congress, however, allowed the manufacturers a defense plainly intended to allow them to offer a discriminatorily lower price favoring only certain retailers in a good faith effort to

13

meet the competition of a rival manufacturer's lower prices. Water Craft would require that the discriminating manufacturer offer *an even* lower price than that necessary to meet the competition of the rival manufacturer – here, that Mercury, in order to avail itself of the defense, must have offered Travis an even *lower* price than was necessary to get its business from OMC. In other words, that if Mercury discriminated *more* against Water Craft, and had harmed it *more*, Water Craft would have no recovery. But, because Mercury was able to get the Travis business from OMC by offering Travis a special low price that was not quite as low as OMC's price, Mercury, according to Water Craft, can have no defense. This approach increases the price disparities between retailers contrary to overall intent of the Act. Nor is any useful purpose suggested by such a requirement. Moreover, Water Craft does not explain how the offering of a price lower than necessary to get Travis's business could be deemed to be "in good faith" on Mercury's part. Such action would also properly be characterized as violating the "defensive" and the "meet not beat" standards referenced in *Falls City*. 103 S.Ct. at 1294. On the other hand, *Falls City* plainly recognizes that the competition defense may apply if the price offered by the competitor is *either* the same price as that offered by the defendant "*or a lower one.*" *Id.*, 103 S.Ct. at 1290.

We also draw support for our holding from the Court's longstanding mandate that the Robinson-Patman Act be construed

14

consistently with broader policies of the antitrust laws. *See e.g.,*
*United States Gypsum Co.; Automatic Canteen Co. of America v. FTC*,
73 S.Ct. 1017, 1024 (1953); *Great Atlantic & Pacific Tea Co.*, 99
S.Ct. at 933; *Volvo Trucks North America, Inc. v. Reeder-Simco GMC,*
*Inc.*, 126 S.Ct. 860, 872-73 (2006). We resist Water Craft's
narrowing of the meeting competition defense, especially in light
of the Court's reminder that "the right of a seller to meet a lower
competitive price in good faith may be the primary means of
reconciling the Robinson-Patman Act with the more general purposes
of the antitrust laws of encouraging competition between sellers."
*Great Atlantic & Pacific Tea Co.,* 99 S.Ct. at 934 n.16; *see also* 14
HERBERT HOVENKAMP, ANTITRUST LAW 2352a, at 182 (2005) ("[T]he [Robinson-
Patman Act] . . . is certainly less hostile toward competition with
such a defense than it would be without one.").

The district court's findings on the meeting competition
defense are not clearly erroneous and the court properly granted
judgment in favor of Mercury on Water Craft's Robinson-Patman Act
claim.

**CONCLUSION**

The judgment of the district court is

AFFIRMED.

15