DeMOSS, Circuit Judge: *
Defendant-Appellant Nenita Sabater, M.D. appeals the district court’s final judgment holding that (1) she is not entitled to qualified immunity with respect to the 42 U.S.C. § 1983 claim brought against her by Plaintiff-Appellee Michael Bias for violations of his Eighth Amendment right to be free from cruel and unusual punishment, and (2) she is liable under § 1983 for Bias’s injuries. We affirm.
I. Background Facts
Bias arrived at the Texas Department of Criminal Justice’s (TDCJ) Allred Unit on May 1, 1997, with a history of at least one suicide attempt. Dr. Sabater was his treating psychiatrist. She diagnosed Bias with clinical depression and prescribed him anti-depressant and anti-psychotic medications. During his stay at the Allred Unit, Bias repeatedly told Dr. Sabater and her staff that he was having suicidal thoughts. Bias specifically stated that he had a “suicide plan,” although he indicated to Dr. Sabater’s staff that he would not follow through with his plan for at least one month. On May 20, 1997, Bias attempted suicide by slashing his left wrist and taking an overdose of seven different medications that he had collected from daily pill call and saved since his arrival in the Unit.[1]
Following his suicide attempt, officers placed Bias in a suicide-watch cell with no clothing and nothing but a “suicide blanket.” Clinic notes from May 20, 1997, state that Bias was “sitting on the side of the bed” and was “awake, alert, and cooperative.” In the early morning hours of *160 May 21, 2007, Bias was “lethargic” but was made “easily alert” with an ammonia inhalant. The clinic notes go on to state that, at this time, Bias “denie[d] taking meds other than his own [and] states he takes meds only as prescribed.” On May 21, 1997, approximately twelve to sixteen hours after Bias’s suicide attempt, Dr. Sa-bater first became aware of Bias’s unconscious or near-unconscious condition. She concluded that he was “suffering] from severe depression and that he was withdrawn and did not want to talk.” That same day, she recommended that Bias be transferred to the Montford Unit, the TDCJ’s psychiatric facility. However, for reasons that are unclear, Bias was actually transported 150 miles from the Allred Unit to the Robertson Unit.[2]
A videotape recorded on May 22, 1997, showed Bias being prepared for transport from the Allred Unit. The video is approximately twenty minutes long and initially shows Bias lying on his back, apparently naked, on a “suicide blanket” on the floor. The video shows several correctional officers attempting to rouse Bias to prepare him for transport by telling him to “wake up” and “open [his] eyes.” Bias’s only responses were to tilt his head to the side and raise his head slightly. Officers attempted to awaken Bias with an ammonia capsule, which resulted in only a groan and some slight movement. Bias appears motionless at all other times throughout the duration of the tape. An officer can be heard asking whether they should “get a nurse to make sure nothing [was] wrong with him” and stating that Bias “can’t even hold himself up.” Because Bias was unconscious, the officers had to lift Bias into a sitting position in order to dress him and place leg irons and handcuffs on him, a process which took approximately ten minutes. Dr. Sabater appears-intermittently on the videotape to supervise Bias’s preparation for transport. Bias’s vital signs were checked during this time and were normal.
Officers placed Bias in the transport van, on his back, in a confined space on the floor that appeared to be just smaller than Bias’s shoulder width. During the transfer, Bias “did not awaken or move.” Curtis Cooper, associate clinical psychologist at Allred, told investigators that the ammonia capsule “was of little or no help” in awakening Bias immediately prior to his placement in the van. Linda Barnaby, nurse at the Robertson Unit, stated that upon arrival, Bias was “not responsive to verbal stimuli nor painful stimuli,” such as a chest rub or eye lash flick. Almost immediately after Bias’s arrival to the Robertson Unit, he was transported to Hendrick Medical Center for an apparent drug overdose. The Trauma Center Note stated that Bias had been “[un]responsive ... for at least the last 24 hours” and was in a “comatose state.” Bias showed signs of multi-system organ failure, but gradually became alert after several days in intensive care.
As a result of being transported in an unconscious or nearly unconscious state on the floor of a van without being moved, *161 Bias suffered a compression injury resulting in necrosis and infection in his right hip, buttocks and thigh. Medical records indicated that he suffered a wound approximately ten inches in diameter that required skin-graft surgery. According to Bias, the injury left “permanent disfigurement.” Bias testified that he lost the skin from his right leg up to his hip, that there remained a hole in his right gluteus maxi-mus, that his right buttock is gone, and that he cannot sit or stand too long because of the nerve damage and muscle loss. The district court viewed Bias’s right hip, thigh, and leg and confirmed that he had suffered substantial physical injury. Dr. Sabater does not dispute that Bias’s transportation in an unconscious state caused his injuries.
II. Procedural History
In 1999, Bias filed pro se a lawsuit pursuant to 42 U.S.C. § 1983 against three wardens (Leslie Woods, Earl Fox, and Ray Castro), Dr. Sabater, and several unknown officers, all of whom worked in the Allred Unit of the TDCJ. Bias asserted that the defendants had acted with deliberate indifference to his serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment. See U.S. Const, amend. VIII.
The district court dismissed Bias’s suit as frivolous, but did so without prejudice. In January 2000, this Court affirmed the dismissal of the claims against the wardens, vacated the judgment with respect to the dismissal of the claims against Dr. Sabater and the unknown defendants, and remanded the case for further proceedings. See Bias v. Woods, No. 99-10709, 2000 WL 122419 (5th Cir. Jan.31, 2000). After further proceedings irrelevant to this appeal, the district court dismissed Bias’s claims against all defendants except Dr. Sabater.
Dr. Sabater filed a motion for summary judgment, arguing that Bias had failed to exhaust administrative remedies, that she was entitled to qualified immunity, and that Bias had failed to state a constitutional violation. The district court denied Dr. Sabater’s motion on July 8, 2002. That same day, the court held a bench trial on Bias’s claim against Dr. Sabater. In an order dated July 26, 2002, 2002 WL 1750792, the district court determined that Dr. Sabater was liable for Bias’s injuries, and Dr. Sabater appealed. In October 2003, this Court dismissed Dr. Sabater’s interlocutory appeal for lack of jurisdiction, concluding that the district court’s judgment was not final because damages had not yet been determined. See Bias v. Woods, 78 Fed.Appx. 951 (5th Cir.2003).
On remand, the district court held a hearing on damages and awarded Bias: $103,800.00 in compensatory damages for physical pain and suffering, mental anguish, and emotional distress; attorney’s fees; costs; and interest. Dr. Sabater timely appealed.
III. Analysis
On appeal, Dr. Sabater argues that the district court erred in denying qualified immunity because: (1) Bias failed to allege a violation of a clearly established constitutional right; (2) Dr. Sabater’s conduct was objectively reasonable in light of the clearly established law;[3] and (3) Bias failed to *162 state or prove a claim other than negligence.
We review a district court’s conclusions of law de novo. See Water Craft Mgmt. LLC v. Mercury Marine, 457 F.3d 484, 488 (5th Cir.2006). We may not set aside a district court’s factual findings unless it is clearly erroneous. See Crawford v. Falcon Drilling Co., Inc., 131 F.3d 1120, 1124 (5th Cir.1997); Fed.R.CivP. 52(a).
Government officials performing discretionary functions are protected from civil liability under the doctrine of qualified immunity if their conduct does not violate “clearly established statutory or constitutional rights of which a reasonable person would have known.” See McClendon v. City of Columbia, 305 F.3d 314, 322 (5th Cir.2002) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Federal courts apply a two-step analysis to qualified immunity claims. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). First, “[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer’s conduct violated a constitutional right?” Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1774, 167 L.Ed.2d 686 (2007) (quoting Saucier, 533 U.S. at 201, 121 S.Ct. 2151). If the answer is yes, the court inquires whether the officer’s conduct was objectively reasonable in light of the law that was “clearly established” at the time of the alleged violation. Goodson v. City of Corpus Christi 202 F.3d 730, 736 (5th Cir.2000).
Bias argues that Dr. Sabater violated his constitutional right to be free from cruel and unusual punishment. See U.S. Const. amend. VIII. The Cruel and Unusual Punishment Clause allows an inmate to obtain relief after being denied medical care if he proves that there was a “deliberate indifference to [his] serious medical needs.” Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir.1995) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). Deliberate indifference requires a showing that Dr. Sabater (1) was “aware of facts from which an inference of excessive risk to the prisoner’s health or safety could be drawn,” and (2) that she “actually drew an inference that such potential for harm existed.” Herman v. Holiday, 238 F.3d 660, 664 (5th Cir.2001). Such a showing requires evidence that prison officials “refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wonton disregard for any serious medical needs.” Domino v. Texas Dep’t of Criminal Justice, 239 F.3d 752, 756 (5th Cir.2001) (quoting Estelle, 429 U.S. at 107, 97 S.Ct. 285). A prisoner’s disagreement with his medical treatment is not actionable under § 1983 absent exceptional circumstances. See Banuelos, 41 F.3d at 235. Under exceptional circumstances, a prison official’s knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk. Farmer v. Brennan, 511 U.S. 825, 842 & n. 8, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). “[I]t remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety.” Id. at 844, 114 S.Ct. 1970.
After applying the facts to the relevant legal standards, the district court made the following findings: Dr. Sabater was not entitled to qualified immunity because “a reasonable person would have known that her conduct in ordering the transportation *163 of an inmate in Bias’[s] condition to a prison unit 150 miles away, rather than providing immediate medical attention, would cause a significant delay, if not a complete denial, of medical care;” Bias’s medical condition on May 22, 1997, was “open and obvious” and “an exceptional circumstance obviously requiring immediate medical attention;” Dr. Sabater “was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed;” Dr. Sabater “actually drew that inference;” and “her intentional failure to act caused a prolonged delay in medical care and resulted in substantial injury to Michael Bias;” and Dr. Sabater was “deliberately indifferent” to Bias’s “serious medical needs” and her conduct resulted in his injuries.
After thoroughly reviewing the briefs and relevant portions of the record, we find no clear error in the district court’s factual findings and affirm for essentially the same reasons stated by the district court in its written order.
AFFIRMED.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

. Although medical records indicate that Bias had seven different medications in his body following the suicide attempt, Dr. Sabater had only prescribed him two medications. There is nothing in the record to explain how Bias obtained the five additional medications.

. At least one of the district court's findings was clearly erroneous: the court determined that Bias was transported to the Robertson Unit ‘‘at the direction of Dr. Sabater.” However, it is undisputed that Dr. Sabater intended to have Bias sent to the psychiatric facility at the Montford Unit. Despite Dr. Sabater’s instructions to transfer Bias to the Montford Unit, he was actually transferred to the Robertson Unit. There is nothing in the record to fully explain this discrepancy. However, Officer Dalton Agnew, one of the officers in the transport van, stated that the "paper work said they were en route to the Montford Unit for Psych, appointments,” indicating that the Robertson Unit was a stop on the way to the Montford Unit.

. Dr. Sabater separately questions whether the relevant law was "clearly established,” but that question is part and parcel of the objective reasonableness analysis. See Williams v. Kaufman County, 352 F.3d 994, 1002 n. 12 (5th Cir.2003) ("The district court, however, unnecessarily decoupled the clearly established/objective unreasonableness test of the Supreme Court. That is, if a right is clearly established enough to impart fair *162 warning to officers, then their conduct in violating that right cannot be objectively reasonable.”).