# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 16, 2009

Charles R. Fulbruge III
Clerk

No. 08-30064

DANRIK CONSTRUCTION INC

Plaintiff-Appellee

v.

AMERICAN CASUALTY COMPANY OF READING PENNSYLVANIA;
TRANSCONTINENTAL INSURANCE CO

Defendants-Appellants

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:05-cv-1940

---

Before GARWOOD, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

This appeal presents a dispute between a construction company and two insurers. Plaintiff-Appellee Danrik Construction, Inc. ("Danrik") asserts that Defendants-Appellants American Casualty Company of Reading, Pennsylvania ("ACC") and Transcontinental Insurance Company ("TIC") (collectively, "Insurers") breached their fiduciary duty to Danrik by failing to pay several claims under Danrik's commercial general liability policy ("CGL policy"). After

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

a bench trial, the district court ruled in favor of Danrik. We reverse and render judgment in favor of Insurers.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Danrik is a construction subcontractor that installs underground conduits and communication cables. Danrik obtained CGL policy coverage from ACC, and TIC renewed this policy, for the time periods relevant to this appeal.

Danrik worked on four projects during the policy periods in which it alleges it incurred covered liabilities. In particular, Danrik's negligent work on projects for Grady Crawford Construction Co. ("Grady Crawford Construction") and BellSouth Telecommunications, Inc. ("BellSouth") led to various damages for both entities as well as for another contractor, Stelly Construction, Inc. ("SCI"), who had originally installed a sewer line that Danrik damaged. Danrik reported these claims to Insurers, asking them to pay Grady Crawford Construction, BellSouth, and SCI for its claims. For each of the losses, Insurers began their adjustment procedure and sought an independent evaluation from an engineering expert on whether the amounts of the claimed damages were reasonable and necessary. Based on the engineering reports, Insurers offered Grady Crawford Construction, BellSouth, and SCI amounts that were slightly lower than the original claims. All three entities refused the settlement offers. Danrik later paid these entities the full amounts of their claims in an attempt to continue doing business with them. Importantly, Danrik did not obtain Insurers' consent before settling the underlying claims. In fact, Insurers stipulate that they were willing at all material times to pay the settlement amounts they had offered to the three entities and have Danrik pay the difference. Instead of agreeing to this arrangement, however, Danrik unilaterally chose to settle the claims.

Danrik then filed suit against Insurers, claiming that Insurers breached their fiduciary duty to timely pay the claims in full and caused Danrik to suffer

lost future profits based on BellSouth's and Grady Crawford Construction's ultimate decision to cease doing business with Danrik. In particular, Danrik claimed that Insurers purposely delayed taking any action on the claims until the underlying tort claims prescribed under Louisiana law, knowing that Danrik would remain contractually liable based on Danrik's indemnity contracts with these entities.

The district court first denied Insurers' motion for summary judgment without written explanation. The court then conducted a bench trial. At the conclusion of the bench trial, it ruled that Danrik had not met its burden of proving lost profits, especially because Grady Crawford Construction continued doing business with Danrik for some time after these claims arose and BellSouth did not have any business opportunities for Danrik. Danrik does not challenge these findings on appeal. The court also ruled that Insurers had breached their fiduciary duty by not paying three of the four underlying claims and awarded Danrik damages in the amount of the cost of the claims ($33,486.03) plus a statutory penalty of the same amount, for a total of $66,972.06. Insurers appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court, which had diversity jurisdiction, issued a final judgment, meaning that this court has jurisdiction under 28 U.S.C. § 1291.

"'The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo.'" *Bd. of Trs. New Orleans Employers Int'l Longshoremen's Ass'n v. Gabriel*, 529 F.3d 506, 509 (5th Cir. 2008) (quoting *Water Craft Mgmt. LLC v. Mercury Marine*, 457 F.3d 484, 488 (5th Cir. 2006)). In construing state law in a diversity case, a federal court must follow the substantive decisions of the state's highest court, here the Louisiana Supreme Court. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003).

## III. DISCUSSION

Insurers raise several issues on appeal, but we dispose of this case based on only one: Danrik cannot recover under the insurance contract because it unilaterally settled the underlying claims without Insurers' consent.

The CGL policy in this case provided that there were several conditions to coverage in the event of an "occurrence, offense, claim or suit." The policy specifically stated, "No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." At trial, one of Danrik's owners testified that Danrik had entered into settlement agreements with all of the claimants for all of the claims and admitted that Danrik took this action without Insurers' consent or authorization. Insurers assert that this action discharged Insurers from any obligations under the CGL policy. Insurers also note that they were willing at all material times to pay the amounts they offered and have Danrik pay the difference.

The case law supports Insurers' argument. In *Rosenthal v. Security Insurance Group of New Haven*, 205 So. 2d 816 (La. Ct. App. 1967), the plaintiff paid a claimant for his damages after the insurer denied liability. The plaintiff then sought to recover from the insurer the amount he paid to settle the claim. *Id.* at 817. The Louisiana court held that the plaintiff had breached the consent-to-settle language in the insurance policy, precluding him from asserting a claim against the insurer. *Id.* The court rejected the plaintiff's argument that the consent-to-settle language was contrary to public policy, in that it provides a disincentive for an insured to pay a claim "to keep his credit name alive in his community and to avoid civil action against him." *Id.* As the court stated,

> It is obvious that the company is obligated to pay only those amounts which the insured is legally liable to pay. This liability must be determined either by a court or by the claimant, the company, and the insured jointly. There are no provisions of the

policy under which the insured has any right to make any determination as to his own liability. His fear as to being the subject of a civil suit is groundless since the company is obligated to defend any suit filed against him, even though it be frivolous.

*Id.* at 817-18.

In another Louisiana Circuit Court of Appeal case, however, the court noted that a "no action clause [stating that an insured has no action against the insurer if the insured breaches the terms of the insurance policy] has been held to be of no effect when an insurer denies coverage where there is coverage, or unjustifiably delays settlement, forcing the insured to settle separately." *Emile M. Babst Co. v. Nichols Constr. Corp.*, 488 So. 2d 699, 703 (La. Ct. App. 1986) (holding the insurer liable for failing to settle the claim when "time was of the essence"). Under a broad reading of Danrik's argument, it is asserting that Insurers unjustifiably delayed settlement, forcing Danrik to settle on its own.[1] The facts of *Babst*, however, are not at all similar to the present case. In that case, the insured, a subcontractor, made repairs stemming from an accident without receiving formal consent from the insurer so as to finish the project on time. *Id.* at 703. Before completing the repairs, the subcontractor "fully cooperat[ed]" with the insurer, kept the insurer "fully informed," and obtained the assurance of two insurance agents that the insurer would cover the claim. *Id.* Had the subcontractor waited for the insurer's official consent to complete the work, it would have lost the subcontract amount and would have been liable under the "hold harmless" clause of the subcontract. *Id.* Under these circumstances, the court held that the insurer's conduct "in indefinitely delaying settlement when . . . the claim of [the subcontractor] was clearly covered, was a breach of its duty to its insured." *Id.* Here, in contrast, Insurers investigated

---

[1] Danrik did not cite *Babst* or raise this issue in connection with Insurers' consent-to-settle argument, and therefore it is arguably waived. Regardless, this case is dissimilar to *Babst*, as we discuss.

the claims and attempted to settle them, and Danrik did not have any immediate risk of losing money if it did not settle.[2] Danrik concedes that the policy required Insurers' consent prior to settlement but simply asseverates, without further elaboration, that seeking consent after Insurers already "refused to settle" would have been useless.

Danrik rests virtually its entire argument for this issue on its contention that Insurers did not suffer any prejudice from Danrik's failure to obtain consent before settling the underlying claims. To the contrary, this court, in construing Texas law regarding an identical consent-to-settle clause, held that an insurer suffers prejudice as a matter of law when an insured unilaterally settles a claim:

> Assuming without deciding that an insurer must show prejudice to avoid its obligations under the policy when the insured breaches the consent-to-settle provision, based on the summary judgment evidence in this case, we are satisfied that National Union suffered prejudice as a matter of law. An insurer's right to participate in the settlement process is an essential prerequisite to its obligation to pay a settlement. When, as in this case, the insurer is not consulted about the settlement, the settlement is not tendered to it and the insurer has no opportunity to participate in or consent to the ultimate settlement decision, we conclude that the insurer is prejudiced as a matter of law. Under these circumstances the breach of the consent-to-settle provision in the policy precludes this action.

*Motiva Enters., LLC v. St. Paul Fire & Marine Ins. Co.*, 445 F.3d 381, 386-87 (5th Cir. 2006). Moreover, one of Insurers' adjusters testified that Danrik's voluntary settlement prejudiced Insurers because it eliminated their ability to investigate the claim or determine a proper percentage of liability. The representative also stated that a unilateral settlement can subject an insurer to

---

[2] Indeed, Danrik presented little evidence to suggest that it had to act quickly to avoid losing business. In fact, the district court found that Grady Crawford Construction continued to do business with Danrik for a little while after the claims arose and that BellSouth did not have any business opportunities for Danrik. Danrik does not challenge these findings on appeal.

double liability, especially if the insured does not obtain a proper release of claims. Danrik does not refute this testimony.

In sum, Danrik, without Insurers' consent, paid BellSouth, Grady Crawford Construction, and SCI to settle the claims. The cases discussed above suggest that whether a court will excuse a breach of a consent-to-settle clause depends on the circumstances of the situation. Here, Insurers initially offered a settlement amount, and after the claimants refused it, Danrik unilaterally settled the claims. There was no "time is of the essence" situation similar to that in *Babst* that might excuse Danrik's action. Danrik's suggestion that any attempt to obtain consent would have been useless or futile is unavailing, especially given that Insurers stipulate that they would have paid the amount their expert stated was reasonable and necessary and would not have objected to Danrik paying the difference. Thus, Danrik's action discharged Insurers' responsibility under the insurance policy; put another way, the facts are more like those in *Rosenthal* and are dissimilar to the situation in *Babst*. Under these facts, Danrik's unilateral decision to settle the underlying claims precludes its ability to recover from Insurers. Moreover, this result is particularly appropriate given that the policy expressly excluded (with some exceptions that are inapplicable) contractual assumed liability. We therefore reverse the judgment of the district court and render judgment in favor of Insurers.

## IV. CONCLUSION

Because the district court denied Insurers' summary judgment motion on this issue without a full written explanation, it is unclear why the court rejected this argument. Nevertheless, given that Danrik breached the conditions of the CGL policy by unilaterally settling the underlying claims, it cannot recover from Insurers. Accordingly, we REVERSE the judgment of the district court and RENDER judgment in favor of Insurers.

REVERSED AND RENDERED.