# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 11, 2009

Charles R. Fulbruge III
Clerk

No. 09-10160
Summary Calendar

ROSE M. FORD

Plaintiff – Appellant

v.

JOHN E. POTTER, POSTMASTER GENERAL, UNITED STATES POSTAL
SERVICE

Defendant – Appellee

Appeal from the United States District Court
For the Northern District of Texas
USDC No. 3:07-CV-1039

Before GARZA, CLEMENT, and OWEN, Circuit Judges.
PER CURIAM:[*]

Plaintiff-Appellant Rose M. Ford ("Ford") appeals the district court's entry of judgment against her after a bench trial on her claim for Title VII age discrimination, and the district court's denial of her motion for an adverse inference based on spoliation of evidence. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**FACTS AND PROCEEDINGS**

In May 2002, the United States Postal Service ("USPS") hired Ford, then aged 39, for a one-year Not-To-Exceed ("NTE") attorney position at its Southwest Law Office in Dallas ("the office").[1] Doris Godinez-Phillips ("Godinez-Phillips"), Managing Counsel for the office, made the decision to hire her, subject to approval from USPS headquarters. Ford resigned shortly after being hired but was asked not to leave by Godinez-Phillips, and her NTE contract was renewed when it expired.

In May 2003, then aged 40, Ford applied for a career position with the office. A fellow NTE attorney who was a decade younger was selected for the position. After her interview, Ford was given feedback by Godinez-Phillips and another member of the committee that reviewed the applicants. Ford does not challenge this employment decision.

In July of that year, Ford again applied for a career attorney position at the Dallas Law Office and was selected for an interview. Chizoma Ihekere ("Ihekere"), who had turned 30 earlier in 2003 and who had joined the Dallas Law Office as an NTE attorney in May 2003, also applied for the position. Ihekere was not initially selected for an interview but was added after Godinez-Phillips instructed the reviewing committee to forward the names of additional applicants for interviews. Ihekere was selected for the position along with Jeffrey Weeks ("Weeks") and Paul Wolf ("Wolf"), both over age 40. Ford's interview did not go well, and Godinez-Phillips later told her that Ihekere was "young and energetic" but denied that Ihekere was selected, or Ford rejected, because of their age. Ford resigned on September 25, 2003. She alleges that her age was a motivating factor in the decision not to hire her as a career attorney.

---

[1] A "Not-To-Exceed" position is a term position that comes with little or none of the employment benefits given to permanent federal employees.

A hearing was held before an EEOC officer in 2005. Ford was awarded no relief and she appealed the agency decision to the Office of Federal Operations in 2006. The agency decision was upheld and Ford filed suit in the Northern District of Texas. The district court denied USPS's motion for summary judgment and a two-day bench trial was held in December 2008. At the conclusion of the evidence, Ford moved for an inference of spoliation of evidence, based on the failure of the government to produce notes that a reviewing committee member made during Ihekere's interview. After trial, the district court issued a memorandum opinion finding in favor of USPS and dismissing Ford's suit with prejudice. The district court also denied the motion for an adverse inference. Ford now appeals, arguing that the district court (1) erred in finding that Ford had not presented direct evidence of discrimination, (2) erred in finding that USPS had presented a legitimate non-discriminatory reason for not selecting Ford, and (3) abused its discretion in denying the motion for an adverse inference.

## STANDARD OF REVIEW

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo." *Bd. of Trs. New Orleans Employers Intern. Longshoremen's Ass'n v. Gabriel, Roeder, Smith & Co.*, 529 F.3d 506, 509 (5th Cir. 2008) (quoting *Water Craft Mgmt. LLC v. Mercury Marine*, 457 F.3d 484, 488 (5th Cir. 2006)). "A finding is clearly erroneous if it is without substantial evidence to support it, the court misinterpreted the effect of the evidence, or this court is convinced that the findings are against the preponderance of credible testimony." *Id.* Reversal is warranted only if the reviewing court is left with "a definite and firm conviction that a mistake has been committed." *Id.* (quotation omitted). Under the Federal Rules, a "reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6). Accordingly, "[t]he

burden of showing that the findings of the district court are clearly erroneous is heavier if the credibility of witnesses is a factor in the trial court's decision." *Dunbar Med. Sys. Inc. v. Gammex Inc.*, 216 F.3d 441, 453 (5th Cir. 2000) (quotation omitted).

## DISCUSSION

Before proceeding, we must determine what evidence we will consider in our analysis of the district court's memorandum opinion. Generally, we will not enlarge the record on appeal with evidence not before the district court. *Trinity Indus., Inc. v. Martin*, 963 F.2d 795, 799 (5th Cir. 1992) (citing *Kemlon Prods. and Dev. Co. v. United States*, 646 F.2d 223, 224 (5th Cir. 1981), *cert. denied*, 454 U.S. 863 (1981)). When reviewing the findings of a district court we will disregard evidence that it did not consider at trial. *See Kirshner v. Uniden Corp. of America*, 842 F.2d 1074, 1077 (9th Cir. 1988) (declining to consider materials not considered by the district court); *United States v. Drefke*, 707 F.2d 978, 983 (8th Cir. 1983) (same); *Stearns v. Hertz Corp.*, 326 F.2d 405, 408 (8th Cir. 1964) (declining to consider affidavit presented for first time on appeal); *Watson v. Rhode Island Ins. Co.*, 196 F.2d 254, 255-56 (5th Cir. 1952) (striking affidavit presented for first time on appeal). Some of the materials referenced in appellant's brief are part of the record on appeal as they were attached in support of various pre-trial motions. But they were not admitted into evidence at trial, and were not considered by the district court in issuing its memorandum opinion. Accordingly, we will limit our analysis to the evidence that was before the district court.[2]

---

[2] Only eight exhibits were admitted into evidence at trial. *See* Bench Tr. Tran., at 5. Ford introduced her resume, her W-2s, and documents relating to her post-resignation job search. The government introduced Ford's resignation letter, an email Ford sent to Godinez-Phillips and others, Ford's appointment letter to her NTE position, Wolf's resume, and a letter from Weeks to the Administrative Coordinator for the office. Among the documents that Ford relies on in her brief that were not before the district court at trial are the transcript of her EEOC hearing; various exhibits presented at the EEOC hearing, including a "Review

We hold that the district court's finding that Ford had not suffered age discrimination was not clearly erroneous. In so holding, we note that the thrust of Ford's argument seems to be that she presented sufficient evidence for the district court to find that discrimination occurred. *See, e.g.*, Bl. Br. at 17 ("a plaintiff's prima facie case . . . may allow" a finding of discrimination); *id.* at 35 (noting "sufficient evidence to demonstrate that age" was factor in employment decision); *id.* at 40 ("a fact finder could infer" that the non-discriminatory reason advanced for not promoting Ford was pretextual). But this assertion is inapposite to our standard of review. Ford must show that the district court's findings and credibility determinations were clearly erroneous. She has not.

Ford argues that Godinez-Phillips's statements to her regarding youthfulness and vibrancy are direct evidence of age discrimination. The district court found that Ford had not produced direct evidence of discrimination. *Ford v. Potter*, No. 3:07-CV-1039, 2008 WL 5272782, at *5 (N.D. Tex. Dec. 18, 2008). This conclusion was based in part on determinations of witness credibility. *See id.* at n.7 & 8.[3] These credibility determinations were not clearly erroneous and the district court, after making them, properly found that the statements did not constitute direct evidence of discrimination and analyzed Ford's claim under the *McDonnell-Douglas* framework.

The district court's conclusion that the government had a non-discriminatory reason for not promoting Ford is also not clearly erroneous. After hearing testimony from both Ford and Godinez-Phillips, the district court concluded that Godinez-Phillips hired Ihekere because the latter possessed a number of qualities that Godinez-Phillips was seeking in new hires, including

Committee Checklist" that is included in the record excerpts; and the transcript of Godinez-Phillips's deposition.

[3] The district court found credible Godinez-Phillips's denial that she told Ford that Ihekere was promoted despite her lack of merit because Ihekere was "youthful" and "vibrant."

trial experience and the potential to act as "corporate counsel," training the client so as to prevent lawsuits. Godinez-Phillips also appreciated Ihekere's exuberance and was disturbed that Ford gave essentially the same responses in her second interview despite being counseled that her earlier answers had been inadequate. After hearing testimony and reviewing the exhibits, the district court also concluded that Ihekere's name was added to the list of interviewees after initially being rejected not for any discriminatory reason, but because USPS was seeking to hire several attorneys and Godinez-Phillips urged the review committee to be less selective. These credibility determinations are not clearly erroneous.

Finally, the district court did not abuse its discretion in denying Ford's motion for an adverse inference based on spoliation of evidence. Such an inference is predicated on the "bad conduct" of the defendant. *United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000). A plaintiff must show that a defendant acted "in bad faith" to establish that it is entitled to such an inference. *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003) (quotation omitted). The district court found that after he was deposed, the interviewee who took the notes showed government attorneys where the notes were stored. Years later—and on the eve of trial—Ford requested that the notes be produced and they could not be found. The district court concluded that "there is no affirmative evidence that the notes have actually been destroyed or, if discarded or destroyed, of the circumstances under which this occurred." *Ford*, 2008 WL 5272782, at *4 n.3. On appeal, Ford identifies no evidence from which a factfinder could conclude that the notes were destroyed or discarded in bad faith, but merely argues that the failure to produce these notes "smell[s] bad [and] is bad conduct and bad faith." Bl. Br. at 49. Ford never objected to the discovery produced by the government prior to the eve of trial, nor did she file a motion to compel production of these

notes. Under these circumstances, the district court did not abuse its discretion in denying her motion for an adverse inference based on spoliation of evidence.

## CONCLUSION

Considering the foregoing, the judgment of the district court is AFFIRMED.