# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-31178
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

October 28, 2014

Lyle W. Cayce
Clerk

MIKE EVANS CRANE SERVICES, L.L.C.,

Plaintiff−Appellee,

versus

CASHMAN EQUIPMENT CORPORATION,

Defendant−Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:11-CV-1525

Before SMITH, WIENER, and ELROD, Circuit Judges.

PER CURIAM:*

Cashman Equipment Corporation ("Cashman") appeals a judgment in

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-31178

favor of Mike Evans Crane Services, L.L.C. ("MECS"), in a dispute over the payment of invoices submitted by MECS for servicing and repairing Cashman's cranes. After reviewing the briefs, the record, and the district court's thoughtful opinion, we affirm.

## I.

MECS sued to recover payments on twelve invoices that it claims are owed for servicing and repairing Cashman's cranes. Cashman removed to federal court on the basis of diversity jurisdiction and filed a counterclaim alleging violations of the Louisiana Unfair Trade Practices Act ("LUPTA"), LA. REV. STAT. § 51:1405, *et seq*. After thoroughly analyzing whether Louisiana State law or general maritime law governs, the district court concluded that the latter applies. Neither party challenges that determination on appeal, nor do we find error with it.

The district court granted summary judgment in favor MECS on ten of the invoices and held a bench trial on invoices 988 and 1036. The court then entered judgment in favor of MECS on the last two invoices and awarded attorney's fees to MECS after finding Cashman's LUPTA claim to be groundless and in bad faith. Cashman appeals the judgment with respect to invoices 988 and 1036 and the award of attorney's fees.

## II.

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed *de novo*." *Water Craft Mgmt. LLC v. Mercury Marine*, 457 F.3d 484, 488 (5th Cir. 2006) (internal quotation marks omitted). A factual "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

2

No. 13-31178

committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

### III.

Cashman claims that invoice 988 should be reduced by at least $3,000 because MECS billed an unreasonably large number of hours. Cashman cites testimony from Michael Evans, MECS's owner, stating that Cashman reasonably could have expected the job to have been done in fewer hours, although neither party disputes that MECS's mechanic actually worked the hours billed. By way of analogy to legal fees, Cashman claims that charges for services in maritime contracts must also be reasonable.[1] We need not decide that issue, however, because Cashman has not demonstrated that invoice 988 was unreasonable.

When Evans's testimony is read in totality, it is clear that he actually reduced the invoice to reflect the value of the services provided. Evans testified that the invoice did not include the normal 20% mark-up on parts and that the hours charged were ten hours less than the hours actually worked. The total invoice was for $25,130.31, with parts accounting for $8,435.31 and labor for $16,695. Because MECS did not charge the usual 20% mark-up, and if all parts would have usually been marked up, the bill was effectively discounted by $1,687.06. In addition to not charging for ten hours that were actually worked, Evans and Jamie Guy, Cashman's corporate representative and operations manager, had agreed to discuss further reducing the invoice, yet that conversation never occurred.[2] Cashman has not proven that the invoice was

---

[1] *See* MODEL RULES PROF'L CONDUCT R. 1.5(a) ("A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.").

[2] Evans testified he wanted to explain to Guy that the bill included "other things we had to do besides just engine work"—suggesting that the bill reasonably reflected the value

No. 13-31178

unreasonable, and the district court did not err in holding Cashman responsible for it.

IV.

Cashman asserts that it is not responsible for paying invoice 1036 because Inland Marine had agreed to pay it. Inland Marine chartered a barge with a crane attached from Cashman. When the crane needed repairs, Darryl Saucier, an Inland Marine employee, called Cashman for assistance. Evans testified that Guy told him to fix the crane and that he coordinated the repairs with Guy; Guy made periodic decisions about whether to repair parts or purchase new ones. Guy testified that he requested a purchase order from Cashman's headquarters for invoice 1036 because MECS "needed to get paid" and that he "had no issues with the work that was done or the quality of the work . . . ." Saucier testified that he did not agree to pay MECS.

Cashman points out that Saucier signed MECS's service reports and avers that this indicates Inland Marine is responsible for the charges. The district court, however, found that Saucier signed only to verify the hours that MECS actually worked and that Saucier did that only because the repairs were taking place on the water and not at Cashman's yard. Because Cashman requested the repairs, coordinated the repairs, and received the benefit of having its crane repaired, the district court did not err in concluding that Cashman was responsible for invoice 1036.

V.

Cashman challenges the award of attorney's fees that was based on the finding that Cashman's LUPTA claim was groundless and in bad faith.

---

of the services actually performed.

4

No. 13-31178

Cashman claimed that MECS violated LUTPA when it did not abide by Cashman's purchase-order policy, charged for overtime without Cashman's authorization, and used outside labor rather than Cashman's labor for its repairs. At the pretrial conference, Cashman indicated that it would dismiss the LUPTA claim but later asserted that it would be able to prove it at trial.

The district court carefully reviewed the business practices between the parties and found that MECS had no notice of Cashman's polices and that they were never enforced; the court concluded that the claim was groundless. The court also found that the LUPTA claim was filed for purposes of harassment after MECS had sued to collect on the invoices. Likewise, the court concluded that Cashman acted in bad faith when it failed to dismiss the claim.

On appeal, Cashman urges that the LUPTA claim was not groundless because Evans admitted that the hours in invoice 988 exceeded Cashman's reasonable expectations and that MECS's overtime calculations were improper. As explained above, invoice 988 was not unreasonable and does not provide grounds to bring a LUPTA claim. The court found that Cashman had notice of MECS's overtime policy, paid overtime without objection on most invoices before this litigation, and made an issue out of the overtime hours only to add a complicating factor at trial.

We cannot say that the district court's conclusions were clearly erroneous. Consequently, the court did not err in awarding attorney's fees and costs to MECS for defending against the LUPTA claim. The judgment is AFFIRMED.

5