STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

03-562


DANA DESSELLE

VERSUS

MICHAEL LAFLEUR, ET AL.


**********


APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2001-2656-A
HONORABLE KERRY L. SPRUILL, DISTRICT COURT JUDGE


**********


ULYSSES GENE THIBODEAUX
CHIEF JUDGE


**********


Court composed of Ulysses Gene Thibodeaux, C.J., Marc T. Amy, and Michael G. Sullivan, Judges.

AFFIRMED.

John Taylor Bennett
Bennett Law Offices
P. O. Box 275
Marksville, LA 71351
Telephone: (318) 253-4631
COUNSEL FOR:
    Plaintiff/Appellee - Dana Desselle


Lawrence Lyle Parker
Bolen, Parker & Brenner
P. O. Box 11590
Alexandria, LA 71315-1590
Telephone: (318) 445-8236
COUNSEL FOR:
    Defendant/Appellee - Liberty Mutual Fire Ins. Co.

**John Scott Thomas**
**700 North Tenth Street - #440**
**Baton Rouge, LA 70802**
**Telephone:  (225) 344-5001**
**COUNSEL FOR:**
      **Defendants/Appellants - Town of Cottonport and Michael LaFleur**

THIBODEAUX, Chief Judge.

In this personal injury case, appellants, Officer Michael LaFleur[1] and the Town of Cottonport (Cottonport) appeal a judgment of the trial court in favor of appellee, Dana Desselle. After denying the defendants' motion for continuance and at the conclusion of trial, the trial court found the defendants to be one hundred percent at fault for the damages suffered by Ms. Desselle. She was awarded a total of $450,480.61 for general damages, past medical expenses, future medical expenses and future earnings. For the following reasons, we affirm the judgment of the trial court.

I.

## ISSUES

The issues for review in this case are whether the trial court should have granted the defendants' motion for continuance, whether the general damage award is excessive and whether the trial court improperly awarded Ms. Desselle $10,944.00 for her loss of future income.

II.

## FACTS

On October 6, 2001, Officer LaFleur accidently backed his police unit into the vehicle operated by Ms. Desselle. The evidence reveals that Officer LaFleur's vehicle was moving at a slow rate of speed. Although Ms. Desselle's vehicle incurred minimal damage, she claims in her brief that when the two cars collided, she "flew forward, then backward, hitting her head on the headrest." After the collision, Ms. Desselle was taken to the hospital by ambulance. Soon after the accident, Ms.

---

[1]Michael LaFleur is no longer a police officer for the City of Cottonport, Louisiana but will be referred to as "Officer LaFleur" in this opinion.

1

Desselle began conservative treatment with Dr. Bryan McCann, a local family practitioner. She began seeing an orthopaedist, Dr. Louis Blanda, on June 8, 2002. Ms. Desselle underwent an MRI in June 2002. Dr. Blanda issued a report indicating that Ms. Desselle had herniated discs. The defendants did not receive a copy of Ms. Desselle's MRI until August 30, 2002, during the deposition of Dr. McCann. The trial date was set for November 26, 2002. Defendants contended that the MRI report indicated degenerative changes of her cervical spine and spurs, but did not mention disc herniations. Although there was no mention of Ms. Desselle's need for surgery until Ms. Desselle's counsel faxed a medical report on November 13, 2002, indicating that Dr. Blanda recommended surgery to repair her disc herniation, the trial court refused the defendants' request for a continuance to allow them to seek a medical examination. Thereafter, a bench trial was held and the trial court found in favor of Ms. Desselle. It is from this judgment that the defendants appeal.

III.

## LAW AND DISCUSSION

### *Continuance*

The defendants assert that the trial court erred in denying their motion to continue the trial. They base their assertion on the fact that they did not know that Dr. Blanda was going to recommend surgery to repair her herniated discs until nineteen days before trial. Because the trial date was imminent, they were unable to have a medical examination conducted by a doctor of their choice. They were forced, instead, to use a doctor who no longer performed surgery and who happened to be available. Conversely, Ms. Desselle asserts that the defendants were well aware that she had a herniated disc and that surgery was one option available to repair the problem.

2

When the trial court denied the defendants' motion to continue, they filed an application to this court for a supervisory writ to review the trial court's decision. On November 22, 2002, we denied the defendants' application finding that the trial court did not abuse its discretion in denying the continuance. Review of an issue previously addressed by an appellate court is generally precluded by the law of the case doctrine. *Barnett v. Jabusch,* 94-819 (La.App. 3 Cir. 2/1/95), 649 So.2d 1158. The doctrine operates to avoid relitigation of the same issue. *Hazelwood Farm, Inc. v. Liberty Oil and Gas Corp.,* (La.App. 3 Cir. 4/2/03), 844 So.2d 380, *writs denied,* 03-1585, 03-1624 (La. 10/31/03), 857 So.2d 476. This doctrine not only applies to those decisions of an appellate court that arise from the full appeal process but to all decisions of an appellate court, including decisions on writ applications. *Hawthorne v. Hawthorne,* 96-89 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, *writ denied,* 96-1650 (La. 10/25/96), 681 So.2d 365. However, the law of the case doctrine does not absolutely bar this court from reconsidering its prior decisions; rather it is discretionary. *Ducote v. City of Alexandria,* 97-947 (La.App. 3 Cir. 2/4/98), 706 So.2d 673, *writs denied,* 98-1061 & 98-1070 (La. 5/29/98), 720 So.2d 671. "The doctrine is flexible, and [the courts] are allowed to deviate from it in cases where it would cause an obvious injustice or where the earlier appellate decision was clearly erroneous." *Hazelwood*, 844 So.2d at 386.

The factual circumstances in this appeal are not much different than the information produced by the parties in the writ application on which we based our earlier ruling. Our earlier ruling was not clearly erroneous. Under these circumstances we will not revisit our earlier decision. The trial court's denial of the defendants' motion to continue was proper.

***General Damages***

3

The defendants contend that general damages in the amount of $350,000.00 awarded to Ms. Desselle by the trial court is excessive and that the failure of the trial court to award a lower amount was an abuse of discretion.

The standard for an appellate court's review of damages was well established in *Reck v. Stevens,* 373 So.2d 498 (La.1979) and was confirmed in *Youn v. Maritime Overseas, Corp.,* 623 So.2d 1257 (La.1993), *cert. denied,* 510 U.S. 1114, 114 S.Ct. 1059 (1994). Suffice it to say, we will not disturb a trial court's award of damages unless we find that the award constitutes an abuse of the trial court's discretion. *Coco v. Winston Industries, Inc.,* 341 So.2d 332 (La.1976). After carefully reviewing the record, we find that the trial court did not abuse its great discretion in awarding Ms. Desselle $350,000.00 for general damages.

As noted above, the accident occurred when Officer LaFleur backed into Ms. Desselle's vehicle. By deposition testimony, Officer LaFleur stated that Ms. Desselle's vehicle was stopped behind his police unit. While stopped, he saw a witness in a parking lot with whom he wanted to talk. He attempted to move his police vehicle by putting it in reverse and taking his foot off the accelerator. However, he did not touch the accelerator. Officer LaFleur testified that he was going one to two miles per hour. However, the police report states that he was going five miles per hour. Regardless of the actual miles per hour the car moved, this was a low impact collision. The back of his police unit hit the front bumper of Ms. Desselle's car.

Although the police report stated that there was no damage to either car in the collision, Ms. Desselle had her vehicle evaluated and testified that her car's bumper was damaged. The estimate to repair the damage was $630.18. Ms. Desselle also suffered neck and back injuries as a result of the accident. Immediately after the accident, she went to the hospital where she complained of moderate neck pain. Since

4

the accident, she has been treated for not only her back and neck injuries but also for temporomandibular joint dysfunction (TMJ) which she also claims resulted from the accident. With respect to the TMJ dysfunction, Dr. Robert Johnson, the dentist who first examined Ms. Desselle on September 18, 2002, almost a year after the accident, testified that she complained of the pain coming from her jaw going down both the sides and back of her neck. Dr. Johnson performed the first of possibly three "full mouth equilibration[s]." Ms. Desselle will require annual dental visits for the rest of her life to "touch up" the equilibrations. The trial court found Dr. Johnson and Ms. Desselle to be credible with respect to her complaints of pain, the doctor's diagnosis of TMJ, and treatment therefore. The trial court also found it believable that Ms. Desselle suffered TMJ as a result of the car accident.

On January 14, 2002, Ms. Desselle sought treatment for her back pain first from Dr. McCann, after her hospital emergency room visit. Her hospital x-rays revealed no fractures, normal disc spaces and normal spine alignment. She was given prescriptions for Vioxx, a medication that alleviates acute pain and Flexeril, a muscle relaxant. In her deposition testimony, Ms. Desselle said that after her first visit, Dr. McCann told her to return to his office as needed. She further testified at trial that she had no reason to see Dr. McCann until March 20, 2002. Ms. Desselle explained that after attending a seminar on March 14, 2002, where she sat in hard metal and wood chairs all day, she experienced continued back pain.

On June 13, 2002, Ms. Desselle saw Dr. Louis Blanda for the first time. In all, Ms. Desselle saw Dr. Blanda three times. Prior to her last visit on November 7, 2002, Dr. Blanda recommended that her back and neck problems be treated conservatively. Ms. Desselle had been attending physical therapy to alleviate her pain as well as taking prescribed medications. The option of Ms. Desselle undergoing surgery was discussed during her August 8, 2002, visit with Dr. Blanda. However, it

5

was Ms. Desselle who wanted to continue conservative treatment. At her November 7, 2002, appointment with Dr. Blanda, Ms. Desselle told him that her pain had worsened and that she wanted to have the surgery. Dr. Blanda agreed with Ms. Desselle as to the worsening of her condition and her need for surgery to alleviate her continued pain. Dr. Blanda recommended that she have an anterior cervical diskectomy/fusion at the C5-6, C6-7 levels.

Dr. Gidman, hired by the defendants to examine Ms. Desselle and her medical records, concluded that she did not have disc herniation or rupture but instead had degenerative changes in her spine unrelated to her accident. He conceded, however, that the accident may have aggravated her pre-existing condition. Dr. Gidman concluded that Ms. Desselle would not benefit from surgery. It is clear from our review of the record that the trial court found Ms. Desselle and her physicians, Drs. Blanda and McCann, more credible on the issues of causation and the extent of the injuries she suffered in the accident.

The defendants make much of the fact that Ms. Desselle could not have been hurt as badly as she claims because Officer LaFleur's vehicle did not collide with her vehicle at a high rate of speed and because the damage to her vehicle was minimal. Essentially, the defendants contend that low property damage equates to minimal impact and therefore minimal injuries. We rejected this contention in *Davis v. Martel,* p. 7 (La.App. 3 Cir. 7/18/01), 790 So.2d 767, 772, *writ denied*, 01-2399 (La. 11/21/01), 801 So.2d 1087 where we stated, quoting the second circuit decision of *Seegers v. State Farm Mutual Auto. Ins. Co.,* 188 So.2d 166, 167 (La.App. 2 Cir. 1966):

> It is strenuously urged that the force of impact was so slight it could not have caused the injuries of the nature and extent complained of by the plaintiff, Ms. Seegers. This argument, in part is based upon the evidence and the record to reflect that the only damage to the rear of the Seegers'

6

automobile was the breaking of the tail pipe bracket and a small dent in the rear bumper requiring a cost of repairs of only $448.88. While it is indisputable [sic] true that the impact as [sic] slight, we think it would be dangerous precedent to attempt to measure the degree of injuries in direct proportion to the force of the collision. The testimony of both the medical expert and the lay witnesses established the fact that Ms. Seegers did sustain some injuries and the minimal force of the collision is, therefore, of no material importance.

Like the plaintiff in *Davis*, there is not even a slight indication by the medical evidence and witness testimony that Ms. Desselle feigned her neck and back injuries following the accident. Both her family physician and orthopaedic surgeon indicate positive findings of cervical problems. Dr. Blanda suggested Ms. Desselle undergo surgery to alleviate her pain. At the time of trial, Ms. Desselle had not yet undergone surgery and was still in pain. Ms. Desselle had over a year of pain since the accident, will have to undergo surgery and will most likely have some pain and suffering subsequent to the surgery during her recuperation. Under these facts, we find that the trial court did not abuse its discretion in its general damage award of $350,000.00.

### *Future Loss of Income*

The trial court awarded Ms. Desselle $10,944.00 for loss of future earnings. This amount was based on her current rate of pay of $11.40 per hour at forty hours per week for six months. Dr. Blanda testified that although some patients can go back to office type work within three weeks after surgery, they would still have to wear a back brace for three months. Further, some patients are unable to get back into physical activity until six months post surgery. Additionally, Ms. Desselle will be required to miss work to attend follow-up visits and have x-rays taken after surgery. Moreover, regardless of her post-surgical back condition, she must still contend with her TMJ injury that will require one to two more full-mouth equilibriums, again

7

causing her to be absent from work. The trial court found from the facts in this case that in Ms. Desselle's case, she would need longer than three weeks to recover from her injuries and to recuperate from her scheduled surgery.

In *Fontenot v. Southwestern Offshore Corp.,* 00-1722, p. 6 (La.App. 3 Cir. 6/6/01), 787 So.2d 588, 593, *writ denied*, 01-1913 (La.10/12/01), 799 So.2d 504 we stated:

> To recover an award for future loss of earnings, the plaintiff must present medical evidence that indicates with reasonable certainty that a residual disability causally related to the accident in question exists, which results in the plaintiff's inability to earn wages to the same extent he could have earned had he not been injured.

We find that the medical evidence was sufficient to support an award of $10,944.00 for future lost earnings damages and was not an abuse of discretion by the trial court.

IV.

## CONCLUSION

For the above reasons, the judgment of the trial court is affirmed. All costs are assessed against the defendants.

**AFFIRMED.**

8