# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 24, 2013

Lyle W. Cayce
Clerk

No. 12-31222

SCOTT JOSEPH DELAHOUSSAYE, individually and on behalf of Dylan Joseph Delahoussaye,

>                           Plaintiff – Appellant Cross-Appellee

v.

PERFORMANCE ENERGY SERVICES, L.L.C.; ONE BEACON INSURANCE COMPANY,

>                           Defendants – Appellees Cross-Appellants

Appeals from the United States District Court
for the Eastern District of Louisiana

Before JOLLY, JONES, and BARKSDALE, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant Scott Joseph Delahoussaye sued several parties, including Cross-Appellants Performance Energy Services, L.L.C. ("Performance") and One Beacon Insurance Company ("One Beacon"),[1] for damages stemming from personal injury that Delahoussaye sustained while working on a fixed platform located in the Gulf of Mexico. After the other parties settled, the suit proceeded to a bench trial, and the district court found Performance 15% at fault for the

---

[1] Cross-Appellants Performance and One Beacon will be referred to collectively as "Performance" unless specified otherwise.

No. 12-31222

accident that caused Delahoussaye's injury and awarded Delahoussaye, *inter alia*, $200,000 in general damages.  On appeal, Delahoussaye challenges the district court's allocation of fault, while Performance challenges the amount of general damages that the district court awarded Delahoussaye as well as the court's ruling that Performance employee Shalico Andow was not a "borrowed employee" of another contractor or the platform owner.  We AFFIRM the judgment allocating liability, but because the award of general damages is excessive as a matter of law, we VACATE and REMAND the general damages award and order REMITTITUR.

## BACKGROUND

Pisces Energy, LLC ("Pisces") is the owner of the Mustang Island 739-A Platform ("Platform") located in the Gulf of Mexico off the coast of Texas.  In August 2009, Pisces retained several independent contractors to perform work-over recompletion on the Platform, including Crescent Drilling Foreman, Inc. ("Crescent"), which provided Richard John Boutte as an on-site consultant for the project; Performance, for which Andow worked as a crane operator; and Warrior Energy Services, LLC ("Warrior"), which supplied a crew to perform coiled tubing work and other operations on the Platform.  Delahoussaye worked on the Platform as part of the Warrior crew.

On August 22, in order to create more room on the Platform, Boutte decided to backload some equipment from the Platform onto an adjacent vessel. Boutte instructed Delahoussaye to serve as a flagman on the vessel as Andow operated a crane to lower the equipment from the Platform onto the vessel's deck.  When Andow first attempted the lift, he could not see the vessel from his vantage point on the crane.  Andow stopped the lift and asked that the vessel be moved farther from the Platform so that he could see the vessel more clearly.  However, Boutte stated that he wanted to carry on with the blind lift and would act as signalman, relaying directions to Andow on how to move the

2

load. The blind lift proceeded with Boutte standing by the Platform handrail, signaling Andow. At some point during the lift Boutte walked away from the handrail but continued to give Andow the signal to lower the load onto the vessel. Andow could see that Boutte did not have a clear view and had lost visual contact with the load for thirty to forty-five seconds. Andow, however, continued to follow Boutte's hand signals to lower the load. As the load descended, it hit other equipment on the deck of the vessel and jarred a handrail free. The handrail struck Delahoussaye on the head and shoulder; he was thrown approximately twenty feet and knocked unconscious for a few moments. After the accident, Delahoussaye was treated for chronic pain and diagnosed with degenerative disk disease, a back injury at L5-S1, an annular tear, and foraminal stenosis.

Delahoussaye filed suit against Pisces and eventually added Crescent, Boutte, Performance, and Performance's liability insurer, One Beacon, as defendants. After the summary judgment phase of litigation, Delahoussaye settled with Pisces, Crescent, and Boutte. The matter proceeded to a bench trial, and the district court found that Boutte (i.e., Crescent) was 85% at fault in causing Delahoussaye's injuries, and Andow (i.e., Performance) was 15% at fault. The court also awarded Delahoussaye $786,824.66 in damages, including $200,000 in general damages, which made Performance, as Andow's employer, liable to Delahoussaye for $118,023.69 of the total amount. Delahoussaye and Performance both timely appealed the judgment.

## STANDARD OF REVIEW

When reviewing a bench trial, this court reviews findings of fact for clear error and legal issues *de novo*. *Water Craft Mgmt. LLC v. Mercury Marine*, 457 F.3d 484, 488 (5th Cir. 2006). Factual findings are clearly erroneous if "(1) the findings are without substantial evidence to support them, (2) the court misapprehended the effect of the evidence, and (3) although there is evidence

which if credible would be substantial, the force and effect of the testimony, considered as a whole, convinces the court that the findings are so against the preponderance of credible testimony that they do not reflect or represent the truth and right of the case." *Id.* To reverse for clear error, this court must have "a definite and firm conviction that a mistake has been committed." *Canal Barge Co. Inc. v. Torco Oil Co.*, 220 F.3d 370, 375 (5th Cir. 2000).

## DISCUSSION

### I.    Allocation of Fault

According to Delahoussaye, the evidence shows that Andow was more culpable for Delahoussaye's injuries than Boutte, and, therefore, Andow should be 85% at fault, whereas Boutte's allocation should be only 15%. A district court's allocation of fault is reviewed for clear error. *McCuller v. Nautical Ventures, L.L.C.*, 434 F. App'x 408, 415 (5th Cir. 2011). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *In re Cardinal Servs., Inc.*, 304 F. App'x 247, 251 (5th Cir. 2008) (internal quotation marks omitted) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573-74, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985)).

Delahoussaye's expert testified at trial that once a crane operator is given a signal from a signalman, the crane operator is generally responsible for completing that task until a different signal is given. It is undisputed that Boutte gave Andow no other signal than the come-down signal until after the accident occurred. Delahoussaye's expert also testified that the accident occurred because Boutte left his position on the Platform and continued to signal Andow without actually seeing where the load was going. Performance's expert similarly testified that the accident was caused because of the hand signals that Boutte gave Andow. He stated that Andow was to assume that Boutte knew it was safe to lower the load and continue following Boutte's come-down signal until Boutte directed otherwise because it could be dangerous for

No. 12-31222

a crane operator to stop his load without his signalman instructing him to do so.  Furthermore, a certified rigger and eyewitness to the accident testified at trial that when a signal is given to a crane operator, the crane operator is expected to follow that signal.  In light of the evidence presented at trial, it was not implausible for the court to find that Boutte, as the designated signalman for the blind lift, was significantly more at fault for Delahoussaye's injuries than was Andow.  Because the district court took a permissible view of the evidence in finding Andow only 15% at fault, we will not alter its determination.

## II.    **The Borrowed Employee Doctrine**

In an effort to exonerate itself from fault, Performance argues that the district court erred when it found that Andow was not a borrowed employee of Pisces, Crescent, or Boutte at the time of Delahoussaye's accident.  "[A]n employer will be liable through respondeat superior for negligence of an employee he has 'borrowed[.]'" *Gaudet v. Exxon Corp.*, 562 F.2d 351, 355 (5th Cir. 1977).  The borrowed employee doctrine "is the functional rule that places the risk of a worker's injury on his actual rather than his nominal employer." *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 178 (5th Cir. 1981).  Whether Andow was a borrowed employee is a question of law, though in some cases factual disputes must be resolved before the district court can make this determination.  *See Billizon v. Conoco, Inc.*, 993 F.2d 104, 105 (5th Cir. 1993).

There is no indication in the record that Performance argued before the district court that Andow was a borrowed employee of Pisces.  In the district court, Performance contended that Crescent or Boutte were borrowing employers, and the court ruled against Performance.  "It is the unwavering rule in this Circuit that issues raised for the first time on appeal are reviewed only for plain error." *McCann v. Tex. City Refining, Inc.*, 984 F.2d 667, 673 (5th Cir. 1993).  Under the plain error standard, this court may correct "a plain

5

forfeited error affecting substantial rights if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1424 (5th Cir. 1996) (en banc) (superseded by statute on other grounds).  Performance does not assert that its failure to raise the defense concerning Pisces in the trial court warrants reversal under the plain error standard, nor is there evidence suggesting that Performance's error seriously affects judicial fairness, integrity, or public reputation.  Perhaps recognizing this deficiency, Performance has failed to clearly assert on appeal who was Andow's borrowing employer.  Instead, as admitted by its counsel during oral argument, Performance simply urges this court to hold that Andow was a borrowed employee of somebody—anybody—other than Performance.  This tactic of "throwing everything at the wall to see what sticks" is not the basis upon which a party successfully invokes the borrowed employee doctrine.

Where multiple contractors are named as defendants, a plaintiff can be the borrowed employee of only one.  That defense, if accepted, exonerates the borrowing employer from liability.  While liberal pleading rules would have allowed Performance to assert the defense alternatively against the other defendants, those defendants had to be placed on notice of the assertion in order to prepare for trial and engage in settlement discussions.  Performance cannot, for the first time on appeal, re-order its defenses in an attempt to overcome the district court's adverse holding.  Because Performance's newly minted strategy fails to show that borrowed employee status should be applied in the instant case, the district court's holding that Andow was not a borrowed employee is affirmed.

## III.   General Damages

Neither party disputes the district court's factual findings with regard to Delahoussaye's injuries and post-accident medical treatment.   Rather, Performance contends that those findings do not support the general damages award of $200,000.   A district court's award of damages is a finding of fact, which we will reverse only for clear error.   *Moore v. M/V ANGELA*, 353 F.3d 376, 384 (5th Cir. 2003).   This court has stated that "[a]n award is excessive only if it is greater than the maximum amount the trier of fact could properly have awarded," *id.*, and that the "maximum recovery rule" for applying remittitur only becomes operative if the award at issue exceeds 133% of the highest previous recovery for a factually similar case in the relevant jurisdiction.   *Lebron v. U.S.*, 279 F.3d 321, 326 (5th Cir. 2002).   Because the facts of every case are different, prior damage awards from other cases are not always controlling, *id.*, and excessiveness is determined by reviewing a case on its own facts, *Moore*, 353 F.3d at 384.

The district court found that Delahoussaye sustained a back injury at L5-S1 as a result of the August 22, 2009, accident, which will require future visits with his physician, periodic doses of medication, and perhaps periodic stints of physical therapy.   However, the court also acknowledged that several hours of surveillance footage show Delahoussaye performing various tasks, including picking up ice chests, squatting with a bag of dog food on his shoulder, jumping in and out of a truck bed, lifting and carrying equipment, bending, dancing, and running up and down steps.   The district court pointed out that during the course of the surveillance, Delahoussaye was not noted to wince, guard, limp, or make any other outward expressions of pain or discomfort.   Accordingly, the district court found that Delahoussaye exaggerated his complaints of pain and was not a candidate for L5-S1 fusion, despite the recommendation of Delahoussaye's orthopedic surgeon.   Moreover,

the district court found that Delahoussaye can return to work in a low-sedentary type position and that his back injury has not significantly affected his relationship with his son.

Although Delahoussaye insists that this case is similar to other Louisiana cases where courts have held that general damage awards higher than $200,000 are not excessive, all of the cases upon which he relies are pointedly dissimilar from this case in that either (1) Delahoussaye's injuries do not rise to the level of the other plaintiffs', or (2) the credibility of the other plaintiffs was not seriously undermined by surveillance video showing performance of daily activities without any indication of pain.[2]  The most factually similar case to Delahoussaye's is *Bazile v. Chevron USA, Inc.*, where the Western District of Louisiana awarded $65,000 in general damages to a plaintiff who was injured while descending his bunk in the housing area of an oil platform on which he worked.  No. 10-0050, slip op., 2013 WL 1288698 at *1 (W.D. La. March 27, 2013).  In *Bazile*, the plaintiff suffered from a central and right side herniated disc at the L4-5 level that caused significant stenosis, as well as associated changes at L5-S1 and L3-4.  *Id.* at *3.  The plaintiff was not able to return to offshore work following his accident, and although the

---

[2] *See e.g.*, *Brock v. Singleton*, 65 So.3d 649 (La. Ct. App. 2011) ($590,000 in general damages to plaintiff injured in truck accident who suffered from pain in his leg, shoulder, fingers, back, foot, toes, head, arm, and hand; had to wear a corset and take medication for pain; would undergo major back surgery; was depressed and suffered from a diminished sexual relationship with his wife); *Cox v. Shelter Ins. Co.*, 34 So.3d 398 (La. Ct. App. 2010) ($250,000 in general damages to plaintiff injured in multi-vehicle accident who suffered from protruding disc in back that would never heal on its own; experienced pain when sitting or standing for long periods of time, severe headaches, and problems picking up her children or lifting any heavy weight; was facing a serious surgery; and video surveillance showed that she was in pain when going about her daily activities); *Desselle v. LaFleur*, 865 So. 2d 954 (La. Ct. App. 2004) ($350,000 in general damages to plaintiff injured in car accident who suffered from cervical problems and joint dysfunction; would require annual dental visits for the rest of her life to treat temporomandibular joint dysfunction; was credible with respect to her pain complaints; and surgery was recommended).

No. 12-31222

treating physician believed that the plaintiff was a surgical candidate, surgery was too risky because of the plaintiff's weight and high blood pressure. *Id.* Based upon the plaintiff's medical information, the district court concluded that $65,000 was an appropriate general damages award. *Id.* at \*6. In reaching this conclusion, the district court referenced three Louisiana Court of Appeal cases that found general damage awards ranging from $40,000 to $100,000 were appropriate based on facts similar to the ones at hand.[3]

In light of these authorities, a general damages award of $65,000 is much closer to what Louisiana courts would award Delahoussaye based on the facts of this case. Because $200,000 is more than 133% of $65,000, the district court's award of general damages is excessive as a matter of law. We remit the general damage portion of Delahoussaye's award to $86,450—that is, 133% of $65,000—unless he elects to have a new trial on general damages. *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995) ("[T]his circuit's case law provides for remittitur if the award is excessive, and new trial on damages alone if the plaintiff declines the remitted award.").

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED with respect to liability issues. However, we VACATE and REMAND to the district court the award of general damages and order a REMITTITUR to $86,450 unless Delahoussaye elects to have a new trial on

---

[3] *See Raimondo v. Hayes*, 30 So.3d 1177 (La. Ct. App. 2010) ($65,000 in general damages to plaintiff who suffered multiple disc injuries and would continue to experience chronic pain throughout her life); *Gradnigo v. La. Farm Bureau Cas. Ins. Co.*, 6 So.3d 367 (La. Ct. App. 2009) ($40,000 in general damages to plaintiff who suffered from mild disc herniations, bone spurs, and a lumbar bulging disc and faced the possibility of future surgery); *Coutee v. Global Marine Drilling Co.*, 895 So. 2d 631 (La. Ct. App. 2005) ($100,000 in general damages to plaintiff who suffered from multiple levels of degenerative disc disease, a herniated disc, myofascial pain syndrome, major episodic depression, and chronic pain syndrome) *rev'd on other grounds*, 924 So. 2d 112 (La. 2006).

No. 12-31222

general damages alone. Additionally, the district court's judgment is REFORMED to include Performance's undisputed liability insurer, One Beacon, which the district court mistakenly omitted from judgment. Judgment AFFIRMED in part, VACATED and REMANDED in part with instructions, REFORMED in part.