# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 23, 2017

Lyle W. Cayce
Clerk

No. 15-60915

GUIDEONE ELITE INSURANCE COMPANY; GUIDEONE INSURANCE
COMPANY,

Plaintiffs - Appellees Cross-Appellants

v.

MOUNT CARMEL MINISTRIES; ALPHA CHRISTIAN SCHOOL; SEAWAY
BANK AND TRUST COMPANY,

Defendants - Appellants Cross-Appellees

Appeals from the United States District Court
for the Southern District of Mississippi
USDC No. 2:13-CV-134

Before KING, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:[*]

After a tornado severely damaged properties in Hattiesburg, Mississippi, this insurance coverage dispute ensued. The district court concluded on summary judgment that coverage was in place at the time of the tornado, and then awarded damages after a four-day bench trial. The insurer appeals the district court's conclusions that its notice of cancellation of the insurance policy

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-60915

was ineffective, and therefore, there was coverage at the time of the loss.  The insured and its mortgage holder appeal various aspects of the district court's damages award, as well as several evidentiary rulings.  Finding no reversible error by the district court, we AFFIRM.

## I.  FACTS AND PROCEEDINGS

Mount Carmel Ministries, which owns and operates the Alpha Christian School in Hattiesburg, Mississippi (collectively, Mount Carmel), purchased a commercial property insurance policy, effective July 7, 2012 to July 7, 2013 (the policy), from GuideOne Elite Insurance Company (GuideOne).  On October 2, 2012, Seaway Bank and Trust Company (Seaway), Mount Carmel's mortgagee, initiated foreclosure proceedings against Mount Carmel due to Mount Carmel's default on its mortgage note.  GuideOne, after learning of the impending foreclosure, sent Mount Carmel a notice canceling the policy.  The notice was dated October 29, 2012, and stated an effective date of cancellation of November 20, 2012—22 days later.

Mount Carmel and Seaway entered into a forbearance agreement on November 7, canceling the foreclosure sale.  When Seaway discovered that GuideOne had canceled the policy, Seaway purchased force-placed coverage[1] for Mount Carmel's buildings, effective January 7, 2013 to February 7, 2013.  On January 29, 2013, Mount Carmel asked GuideOne to reinstate the policy, but GuideOne did not immediately respond.  Though Seaway allegedly informed Mount Carmel that it would continue purchasing force-placed

---

[1] "Force-placed insurance is the insurance that a lien holder places on a property to provide coverage in the event the borrower allows the coverage to lapse or when the borrower's coverage actually lapses. . . . Costs of the insurance are typically paid up-front by the lien holder, but then added to the balance of the lien." *Baxter v. PNC Bank Nat. Ass'n*, 541 F. App'x 395, 396 n.1 (5th Cir. 2013) (per curiam).

insurance, Seaway apparently mistakenly failed to renew the coverage after February 7.

On February 10, 2013, after the force-placed coverage had expired, a tornado struck Hattiesburg, severely damaging several of Mount Carmel's buildings. The evidence shows that the next day, GuideOne employees communicated amongst themselves about the tornado and Mount Carmel's pending request for reinstatement. On February 18, GuideOne denied the request for reinstatement, explaining that the policy "was canceled on November 20, 2012." The pastor of Mount Carmel then signed an affidavit stating that Mount Carmel had no insurance other than force-placed insurance. However, on April 22 and 23, Seaway and Mount Carmel sent GuideOne letters asserting that the cancellation of the policy was ineffective.

GuideOne then filed suit in the District Court for the Southern District of Mississippi seeking a declaration that the policy was cancelled and not in force on the date of the loss. Mount Carmel and Seaway each filed defenses and counterclaims. Each party then moved for summary judgment. Seaway and Mount Carmel argued that GuideOne's cancellation of the policy was ineffective because it did not provide sufficient notice of cancellation under either Mississippi law or the terms of the policy.[2]

The district court granted Mount Carmel's and Seaway's motions for partial summary judgment on the issue of coverage and partially granted GuideOne's motion for summary judgment on the issue of punitive damages. The district court first determined that GuideOne's notice of cancellation was

---

[2] Mississippi law provides that a cancellation of an insurance policy is "not effective" unless notice is mailed not less than 30 days prior to the effective date of cancellation. Miss. Code. Ann. § 83-5-28(1). And the policy contained a notice clause requiring GuideOne to give Mount Carmel 60 days' notice prior to cancellation, and Seaway 30 days' notice.

ineffective under both the Mississippi statute and the policy, and therefore, the policy was in effect at the time of the tornado.  The district court also found that GuideOne breached the policy by providing insufficient notice of cancellation and granted summary judgment to Seaway on its breach of contract counterclaim.  However, it determined that GuideOne had an arguable basis for denying coverage at the time, and thus, punitive damages were not proper under Mississippi law.  It accordingly partially granted GuideOne's motion for summary judgment with respect to Mount Carmel's counterclaims for punitive damages.

Following the court's ruling, the parties proceeded to a four-day bench trial to determine the amount of damages.  In a written order following the trial, the district court awarded Mount Carmel and Seaway $1,693,035 in damages, representing what would have been the cost to repair or replace the property roughly six weeks after the tornado, less depreciation.  Mount Carmel and Seaway had sought a much higher amount to compensate for the severe deterioration in the buildings that occurred after the initial damage estimate.

Mount Carmel and Seaway appeal, challenging various aspects of the district court's damages award.  Mount Carmel also appeals various evidentiary rulings.  GuideOne cross-appeals the court's determination that the notice of cancellation was ineffective and thus the policy coverage was in place at the time of the tornado.

## II.  STANDARDS OF REVIEW

We review the district court's grant of summary judgment de novo, applying the same standard as the district court.  *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a). We also review the district court's interpretation of an insurance policy de novo. *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 428 (5th Cir. 2007). We review the district court's damages award for clear error. *Delahoussaye v. Performance Energy Servs., L.L.C.*, 734 F.3d 389, 394 (5th Cir. 2013). "To reverse for clear error, this court must have 'a definite and firm conviction that a mistake has been made.'" *Id.* at 392 (quoting *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 375 (5th Cir. 2000)). We review the district court's evidentiary rulings and discovery orders for abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Brown v. Ill. Cent. R. Co.*, 705 F.3d 531, 535 (5th Cir. 2013) (quoting *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007)). Finally, we generally review the district court's denial of prejudgment interest for abuse of discretion. *Reyes–Mata v. IBP, Inc.*, 299 F.3d 504, 507 (5th Cir. 2002).

## III. NOTICE OF CANCELLATION

GuideOne appeals the district court's grant of summary judgment on the issue of coverage, arguing that there was no coverage in place because it had effectively canceled the policy before the tornado. Mississippi law provides that the cancellation of an insurance policy "is not effective . . . unless notice is mailed or delivered . . . not less than thirty (30) days prior to the effective date of such cancellation." Miss. Code. Ann. § 83-5-28(1).[3] In addition to this

---

[3] Miss. Code Ann. § 83-5-28 provides in full:

(1) A cancellation . . . in coverage . . . of liability insurance coverage, fire insurance coverage or single premium multiperil insurance coverage is not effective as to any coverage issued or renewed after June 30, 1989, unless notice is mailed or delivered to the insured and to any named creditor loss payee by the insurer not less than thirty (30) days prior to the effective date of

## No. 15-60915

statutory requirement, the policy contained a notice clause requiring GuideOne to give Mount Carmel 60 days' notice prior to cancellation, and Seaway 30 days' notice. While much of the parties' briefing focuses on the district court's interpretation of the Mississippi statute, we first analyze the effectiveness of GuideOne's notice of cancellation under the policy's more burdensome requirements.

The policy provided that GuideOne could cancel the policy (for any reason other than nonpayment) via a "written notice of cancellation" to the insured mailed "at least . . . 60 days before the effective date of cancellation." The policy further stated that the "[n]otice of cancellation *will* state the effective date of cancellation" *and* that the "[t]he policy period *will* end on that date." (Emphases added.) GuideOne mailed the notice of cancellation to Mount Carmel on October 29, 2012, and the notice stated an effective date of November 20, 2012—22 days later. Clearly, this 22 day notice of cancellation did not comply with the policy's directives that notice of cancellation be mailed no less than 60 days prior to the effective date of the cancellation and that the notice state an effective date in accordance with this notice period. Accordingly, GuideOne's notice of cancellation was not effective under the policy, and therefore, coverage was still in effect at the time of the tornado (February 10, 2013).

---

such cancellation, reduction or nonrenewal. This section shall not apply to nonpayment of premium unless there is a named creditor loss payee, in which case at least ten (10) days' notice is required.

(2) The provisions of subsection (1) shall be incorporated into each liability, fire and multiperil policy issued or renewed after June 30, 1989; and if such provisions are not expressly stated in the policy, such provisions shall be deemed to be incorporated in the policy.

6

No. 15-60915

GuideOne's arguments to the contrary are unavailing.  GuideOne notes that the "majority rule" amongst other jurisdictions is that a too-short notice of cancellation nevertheless becomes effective after the passing of the required notice period.  It urges that here too its notice to Mount Carmel should be considered effective 60 days after it sent the notice, *i.e.*, cancellation was nevertheless effective before the tornado struck.  Yet, this argument flies in the face of the Mississippi Supreme Court's directive to enforce the plain and unambiguous terms of an insurance policy as they are written.  *See, e.g.*, *Noxubee Cty. Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1165 (Miss. 2004).  The plain terms of the policy do not allow for such an exception for too-short notices, and we therefore decline to read such an exception into the policy.

GuideOne also cites a Mississippi Supreme Court case in which a cancellation notice's failure to provide the notice required under the policy did not render it ineffective, but merely delayed its effectiveness until after the 5-day notice period required by the policy had passed.  *See Phenix Ins. Co. of Brooklyn v. Hunter*, 49 So. 740, 741 (Miss. 1909).  However, *Hunter* is easily distinguishable.  The policy at issue there merely provided that "[t]his policy shall be canceled . . . by the company giving five days' notice of such cancellation." *Id.* at 740.  The Mississippi Supreme Court reasoned that a notice of cancellation providing less than 5 days' notice nevertheless became effective upon the 5 days passing.  *Id.* at 741.  Yet, here, the policy required both a minimum days' notice of cancellation, as the policy in *Hunter* did, *and* that the notice of cancellation specify the effective date of the cancellation.  Thus, to be effective under the policy, a notice of cancellation must not only be sent at least 60 days in advance but also specify an effective date no sooner than 60 days from its mailing.  Thus, we conclude that GuideOne's notice of

No. 15-60915

cancellation was ineffective under the policy and coverage did not expire upon the lapse of the required notice period. The district court did not err in granting summary judgment against GuideOne on this issue.[4]

## IV. DAMAGES

Mount Carmel and Seaway appeal various aspects of the district court's damages award. We address each argument in turn.

### A. Damages Owed Under the Policy

Mount Carmel and Seaway challenge the district court's interpretation of the policy and calculation of the damages GuideOne owed under the policy, primarily on the basis that the district court erred in failing to award damages for loss occurring subsequent to the tornado.

The policy required GuideOne to "pay for direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss."[5] The policy provides how GuideOne will pay for loss:

> 4. Loss Payment
> a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:
> > (1) Pay the value of lost or damaged property;
> > (2) Pay the cost of repairing or replacing the lost or damaged property, subject to b. below;
> > (3) Take all or any part of the property at an agreed or appraised value; or
> > (4) Repair, rebuild or replace the property with other property of like kind and quality, subject to b. below.
> We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage

---

[4] Because we conclude that the notice of cancellation was ineffective under the requirements of the policy, we do not analyze whether it was also ineffective under the lesser requirements of Mississippi law. *See* Miss. Code. Ann. § 83-5-28(1).

[5] The parties do not dispute that the tornado was a "Covered Cause of Loss" and caused "direct physical loss."

Form or any applicable provision which amends or supersedes the Valuation Condition.

The "Valuation Condition," describes how GuideOne determines the value of damaged property.

The policy included a declaration that adjusted this loss calculation, the "Actual Cash Value" endorsement. This endorsement replaced the standard valuation conditions, providing that loss or damage would be calculated as the *lesser* of:

   a. The amount it would *cost to repair or replace* covered property with material of like kind and quality, subject to a deduction for deterioration, depreciation or obsolescence, however caused; or
   b. The *market value* of covered property, based upon recent sales of comparable property, if available.

 (Emphases added.)

The district court determined that GuideOne was obligated to pay as damages under the policy the "direct physical loss of or damage to" the property, as measured by the lesser of the "cost to repair or replace" (minus depreciation) or the "market value," as stated in the Actual Cash Value definition. Having made this determination, the district court then turned to expert testimony on the cost to repair or replace the damaged buildings. Each party had a different expert assess the damage to the property. The parties generally credit the validity of each expert assessment and agree that the difference in assessments was "attributable solely to the timing of the assessments." GuideOne's expert assessed the damage about 6 weeks after the tornado and found $1,660,535.31 in damages; Mount Carmel's expert assessed the damage twice, 11 months and 17 months after the tornado, and found $8,326,418.92 in damages; and Seaway's expert assessed the damage 16–17 months after the tornado and found $7,527,830.76 in damages.

No. 15-60915

The district court similarly credited all expert assessments but ultimately relied on GuideOne's expert assessment, as it occurred the closest to the date of the tornado. The court did not use either Mount Carmel's or Seaway's expert assessments because they were done many months after the tornado and, as a result, included "damages caused by factors subsequent to the tornado, such as water intrusion, exposure to the elements, and humidity." The court reasoned that to award damages for this subsequent loss would be contrary to the plain text of the policy, which obligated GuideOne to pay only for the "'direct physical loss of or damage to' [Mount Carmel's buildings] caused by the tornado." According to the district court, Mount Carmel's and Seaway's expert assessments did not provide the court any non-arbitrary means to delineate between damages directly caused by the tornado and those incurred subsequently because they were performed so long after the tornado occurred. In contrast, the court found that GuideOne's expert assessment "provide[d] the most relevant evidence on [direct physical loss of or damages]" to Mount Carmel's buildings from the tornado because it was done less than two months after the tornado. Using GuideOne's expert assessment,[6] the district court found the cost to repair or replace Mount Carmel's damaged buildings was $1,693,035.31. And using the undisputed testimony from Seaway's expert on the market value of Mount Carmel's buildings, the district court found their pre-loss market value was $2,450,000. Finally, following the loss calculation formula provided in the Actual Cash Value definition, the district court took

---

[6] The district court supplemented GuideOne's expert assessment with structural engineering fees and the costs of asbestos and mold testing from the other expert assessments, because GuideOne's expert admitted that these costs should be included in the final estimate but were not.

10

the smaller sum—the cost to repair or replace—as the Actual Cash Value and thus the appropriate damages award under the policy.

Mount Carmel and Seaway offer no compelling argument for disturbing the district court's well-reasoned interpretation of the policy and detailed calculation of damages owed under the policy.  The district court properly found that the loss should be valued using the policy's Actual Cash Value definition as the lesser of (1) the cost to repair or replace (minus depreciation) or (2) the market value of the property.  We enforce the plain and unambiguous terms of actual cash value provisions like the one at issue in this case, *see, e.g.*, *Real Asset Mgmt., Inc. v. Lloyd's of London*, 61 F.3d 1223, 1230–31 (5th Cir. 1995), and accordingly do not find this determination to be in error.

Mount Carmel nevertheless argues that loss under the policy should be calculated under another provision of the policy, the Agreed Value endorsement, rather than the Actual Cash Value endorsement.  The Agreed Value endorsement is optional coverage that renders the policy's coinsurance clause inapplicable.  Coinsurance clauses in property insurance discourage insureds from underinsuring property.  *See* 15 Couch on Insurance § 220:3.  If Mount Carmel underinsured the property*, i.e.,* insured for a value less than the actual value of the property, the coinsurance clause in the policy only requires GuideOne to pay the loss multiplied by the proportion of the Limit of Insurance value compared to the actual value.  The Agreed Value endorsement gets around coinsurance by using an agreed upon value for each of Mount Carmel's buildings, set at each building's Limit of Insurance value.  The policy set the agreed values for the two buildings in question at $2,555,000 and $4,286,000.  Mount Carmel argues that the Agreed Value endorsement dictates the policy's loss coverage, setting an "agreed actual cash value amount of $6,841,000."   Mount Carmel further argues that GuideOne, through its

employees, admitted at trial that this was the proper amount of coverage under the policy.

Mount Carmel's argument is inconsistent with the plain language of the policy. The policy included the Actual Cash Value endorsement, and the method for valuation is clearly spelled out in the Actual Cash Value definition. The Agreed Value endorsement did not set the amount of loss coverage; rather it simply waived the policy's coinsurance clause. Though the Agreed Value Endorsement includes a Statement of Values that lists the "Actual Cash Value," Mount Carmel offers no support for its argument that the actual cash value listed in the Agreed Value endorsement should supplant the clear method of valuation provided in the Actual Cash Value endorsement. The policy never states that GuideOne will pay the Agreed Value in the event of loss, but instead that it will pay the Actual Cash Value. And the district court did not err in holding that any statements by GuideOne employees to the contrary were irrelevant. Under Mississippi law, an insured may not rely on an insurer's agent's representations that are contrary to the terms of the policy. *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 438 (5th Cir. 2007). Mount Carmel seeks to distinguish this rule by calling the employees' statements "admissions," not merely representations. However, even were we to consider the employees' testimony, the testimony Mount Carmel cites is ambiguous at best and does not confirm "that the values in the Agreed Value Endorsement [were] controlling," as Mount Carmel claims.

Mount Carmel also argues that the district court's refusal to use its expert's assessment in calculating the cost to repair or replace was clearly erroneous. The district court made the finding of fact that GuideOne's expert estimate provided "the clearest picture of the damages directly caused by the tornado." We find no clear error in this finding. The policy required GuideOne

to pay for only the "direct physical loss of or damage to" Mount Carmel's buildings. The district court thoroughly considered each parties' expert estimate, ultimately selecting GuideOne's because it was done nearest to the date of the tornado and thus best captured the resulting "direct physical loss." And GuideOne's expert assessment was well supported—there was testimony that it took over 183 hours of work to compile, with 5 people on site a total of 228 hours; that it accounted for all known issues; and that it represented "numbers that [GuideOne's builder, Taylor Ball] would have been willing to write a contract with the insured at that time." The district court also carefully supplemented GuideOne's expert's assessment with structural engineering fees and the costs of asbestos and mold testing from the other expert assessments. The district court thoroughly weighed and considered the expert evidence and ultimately found that GuideOne's assessment most accurately captured the direct physical loss caused by the tornado. We will not disturb this finding because we are not left with a definite and firm conviction that the district court made a mistake.[7]

## B. Punitive Damages

Mount Carmel and Seaway argue that the district court erred in granting GuideOne's motion for summary judgment with regard to Mount Carmel's and Seaway's counterclaims for punitive damages. "To recover

---

[7] Because we find no error in the district court's calculation of direct physical loss under the Actual Cash Value endorsement, we do not address Seaway's and Mount Carmel's arguments on their duty to mitigate losses, as the district court explicitly stated that its finding that Mount Carmel failed to take reasonable measures to mitigate its damages was "irrelevant to the Court's decision insofar as the policy requires GuideOne to pay 'the amount it would cost to repair or replace the 'direct physical loss of or damage to' Mount Carmel's [buildings] caused by the tornado." Nor do we address Seaway's and Mount Carmel's arguments regarding why the market value is not a cap on damages, because the cost to repair or replace, not the market value, was the measure of damages under the formula provided in the Actual Cash Value endorsement.

punitive damages for bad faith denial of [an] insurance claim, [insureds] 'must show that the insurer denied the claim (1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights.'" *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 628 (5th Cir. 2008) (quoting *U.S. Fid. & Guar. Co. v. Wigginton*, 964 F.2d 487, 492 (5th Cir. 1992)).   Whether an insurer possessed an arguable or legitimate reason to deny coverage is a question of law, which we review de novo. *James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 70 (5th Cir. 2014). The district court concluded that although it had ultimately rejected GuideOne's argument that the cancellation was effective, GuideOne had an arguable basis for its decision to deny coverage.  The district court accordingly terminated its punitive damages analysis at the first prong of the test and did not consider whether GuideOne acted with malice or gross negligence.

Mount Carmel and Seaway challenge this conclusion on appeal.  They argue that GuideOne's defective notice of cancellation, which violated the express notice requirements of both Mississippi law and the policy, was sufficient as a matter of law to defeat summary judgment on the issue of punitive damages.  They urge that because the district court found that the notice of cancellation was defective under both Mississippi law and the policy, GuideOne's misinterpretation of these sources cannot serve as an arguable basis for the denial of coverage.

Yet these arguments overlook the fact that GuideOne relied on the majority rule in interpreting both Mississippi law and the policy, which allows a defective notice of cancellation to become effective after the notice period has lapsed.  And, as GuideOne notes, the Mississippi Supreme Court has not spoken on this precise issue.  Although we do not believe the Mississippi Supreme Court would do so under the circumstances presented in this case,

courts in other jurisdictions have disregarded policy provisions similar to that at issue here (*i.e.*, requiring a cancellation notice to specify the effective date of cancellation) and found the notices to be effective upon expiration of the period set forth in the policy. *See, e.g.*, *Wright v. Grain Dealers Nat. Mut. Fire Ins. Co.*, 186 F.2d 956, 958 (4th Cir. 1950) (addressing a policy that required notice to state "when not less than five days" after mailing cancellation would be effective). Thus GuideOne's interpretation of Mississippi law and the policy, though ultimately wrong, had an arguable basis given that it is the majority rule in other jurisdictions.

Mount Carmel and Seaway also claim that GuideOne did not rely on its alleged arguable basis for denying coverage—that the cancellation was effective after the notice period—until the start of litigation. Mississippi law requires that courts, in assessing whether there is an arguable basis, evaluate solely "the reasons for denial of coverage given to the insured by the insurance company." *Sobley v. S. Nat. Gas Co.*, 210 F.3d 561, 564 (5th Cir. 2000); *see also Bankers Life & Cas. Co. v. Crenshaw*, 483 So. 2d 254, 273 (Miss. 1985) (en banc) ("[T]he issue is not the defense which [the insurer] at trial finally settled upon to defend the suit, but the reason it gave [the insured] for denying the claim."), *aff'd on other grounds*, 486 U.S. 71 (1988). At the time GuideOne denied reinstating coverage, GuideOne took the position that the policy was canceled on the date stated in the notice of cancellation, November 20. Once litigation commenced, GuideOne described its decision not to reinstate coverage as being based on the fact that "cancellation became effective once the required 60 days elapsed." Notwithstanding this change in explanation, GuideOne's underlying basis for denying coverage remained the same throughout: the policy was not in effect at the time of the loss because it had been cancelled. We conclude that the arguable basis that GuideOne initially relied upon for denying coverage is

fundamentally the same as it relies on now, and accordingly, the district court did not err in granting summary judgment in GuideOne's favor on the issue of punitive damages.

Finally, Mount Carmel appears to argue for the first time that, even if GuideOne did have an arguable basis for denying coverage, it should still be subject to punitive damages.  Generally, under Mississippi law, punitive damages may not be awarded in the presence of an arguable basis for the insurer's denial of coverage. *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1184 (Miss. 1990).  However, there are "extreme factual situations," such as an insurer unduly delaying payment and using the insured's dire financial position as settlement leverage, in which punitive damages may be awarded notwithstanding the presence of an arguable basis for the insurer's denial. *Id.* at 1186 (quoting *Aetna Cas. & Surety Co. v. Day*, 487 So. 2d 830, 834 (Miss. 1986)).  This is because the insurer's conduct "breaches 'an implied covenant of good faith and fair dealing' and rises to the level of an independent tort." *Broussard*, 523 F.3d at 629 (citing *Stewart v. Gulf Guar. Life Ins. Co.*, 846 So. 2d 192, 202 (Miss. 2002)).  In support of this argument, Mount Carmel contends that GuideOne "knowingly place[d] [Mount Carmel] in financial hardship" because it knew Mount Carmel would have trouble finding a replacement policy.  This argument was not raised in the district court and therefore we review it for at most plain error. *McCann v. Tex. City Ref., Inc.*, 984 F.2d 667, 673 (5th Cir. 1993).  We conclude that the district court did not plainly err in barring punitive damages.  Taking the facts in the light most favorable to Mount Carmel, GuideOne's alleged conduct did not rise to the necessary level of an independent tort that would warrant punitive damages. Mount Carmel merely alleges that GuideOne had "knowledge of the financial harm that would result" from its cancellation of the policy.  But this type of

knowledge is likely present for many cancellations and alone is not sufficient to rise to the level of an independent tort.  Accordingly, it does not warrant punitive damages.

## C. Consequential Damages

Mount Carmel argues that the district court erred in excluding consequential damages, namely subsequent loss from the deterioration of the property over time, from its damages award.  Subsequent loss is important in this case because all parties agree that Mount Carmel's buildings suffered extensive deterioration in the years following the tornado.  Consequential damages are "losses proximately resulting from [a contractual] breach . . . which the parties at the time of contracting had reason to foresee as a probable result of the breach."  *Day*, 487 So. 2d at 835.  Under Mississippi law, "[i]nsurers who are not liable for punitive damages may nonetheless be liable for 'consequential . . .damages  . . .' where their decision to deny the insured's claim is without 'a reasonably arguable basis' but does not otherwise rise to the level of an independent tort." *Broussard*, 523 F.3d at 628 (quoting *Andrew Jackson Life Ins. Co.*, 566 So. 2d at 1186 n.13).  The district court concluded that, although GuideOne had breached its contract with Mount Carmel, Mount Carmel was not entitled to consequential damages because "GuideOne had a reasonably arguable basis for denying coverage."

In arguing that the district court's denial of consequential damages was in error, Mount Carmel cites to *Aetna Casualty & Surety Co. v. Day*, which held that insureds can recover from an insurer "any losses proximately resulting from the [insurer's] breach" that were foreseeable, even when the insurance policy "expressly limits coverage to a specific amount." 487 So. 2d at 835.  But in the years since *Day*, the Mississippi Supreme Court appears to have moved away from a contract-based theory of recovering consequential damages in

first-party insurance cases, instead permitting them only in cases where there was no arguable basis for the insurer's denial of the insured's claim—essentially, a negligence-based theory of recovery. *See Windmon v. Marshall*, 926 So. 2d 867, 874 (Miss. 2006) (addressing argument that insured "may still be entitled to consequential or extra-contractual damages for lack of a reasonably arguable basis" for denial (footnote omitted)); *State Farm Mut. Auto. Ins. Co. v. Grimes*, 722 So. 2d 637, 643 (Miss. 1998) (en banc) (discussing "those cases in which the insurer has no reasonable basis to deny and is therefore liable for consequential damages"); *Andrew Jackson Life Ins. Co.*, 566 So. 2d at 1186 n.13 (recognizing that "consequential . . . damages . . . may be awarded in cases involving a lack of a reasonably arguable basis—notwithstanding that the insurer is not liable for punitive damages"). And this court has similarly characterized Mississippi law as requiring that an insurer's denial of coverage lack "a reasonably arguable basis" in order for the insurer to be liable for consequential damages. *See Broussard*, 523 F.3d at 628. Although we recognize that *Day* may suggest to the contrary, "we give great deference to the district court's interpretation of the law of the state in which its sits when," as here, that state's law is unclear. *See Coatings Mfrs., Inc. v. DPI, Inc.*, 926 F.2d 474, 476 (5th Cir. 1991). Accordingly, we defer to the district court's conclusion that consequential damages are only available under Mississippi law when an insurer denies the insured's claim without an arguable basis.[8]

---

[8] To the extent that Seaway separately appeals the district court's grant of partial summary judgment barring recovery of *Veasley* damages, we affirm the district court on essentially the same basis. Because we conclude that GuideOne had an arguable basis for denying coverage, *Veasley* damages are not available. *See Essinger v. Liberty Mut. Fire Ins. Co.*, 534 F.3d 450, 451 (5th Cir. 2008) (explaining that *Veasley* damages are warranted "where

No. 15-60915

## V.  EVIDENTIARY AND DISCOVERY ORDERS

Mount Carmel appeals three pretrial orders: the exclusion of expert testimony, the exclusion of a sealed document, and the denial of a motion to compel certain documents.

Mount Carmel first appeals the district court's exclusion of an expert witness Mount Carmel had designated to testify on whether GuideOne had an arguable basis for denial of coverage.  However, this testimony was rendered irrelevant by the district court's legal determination that GuideOne had an arguable basis for denial.  Further, the question whether GuideOne had an arguable basis for denial was "an issue of law for the court" to decide, *Broussard*, 523 F.3d at 628 (quoting *Wigginton*, 964 F.2d at 492), but experts may render opinions on only factual issues, not legal issues, *see Goodman v. Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009) ("[A]n expert may never render conclusions of law.").  Thus, it was not an abuse of discretion for the district court to exclude this testimony.

Second, Mount Carmel appeals the district court's exclusion of a document that the court found was privileged and inadvertently disclosed.  The court granted GuideOne's motion to strike this document on two alternative grounds.  First the court found that Mount Carmel was procedurally barred from challenging the privileged status of the document because it failed to timely move for a determination of privilege.  Alternatively, the court found that document was subject to GuideOne's attorney-client privilege and that its inadvertent disclosure of this document did not constitute a waiver of this privilege.  On appeal Mount Carmel challenges only the district court's

---

the insurer lacks an arguable basis for delaying or denying a claim, but the conduct was not sufficiently egregious to justify the imposition of punitive damages").

privilege determination; it does not challenge the court's procedural ruling. Thus even were we to find error in the district court's privilege determination, its alternative procedural basis for excluding the document would still stand. Accordingly, we decline to address this argument any further.

Finally, Mount Carmel appeals the district court's denial of its motion to compel certain documents. The district court affirmed the magistrate judge's order denying this motion to compel because it was untimely under the court's local rules. On appeal, Mount Carmel makes no argument that the court's ruling was arbitrary or clearly unreasonable, as required for this court to overturn the order, *Angus Chem. Co.*, 782 F.3d at 179, nor does it offer an explanation for the untimeliness of the motion. Accordingly, the district court did not abuse its discretion in denying the motion to compel.

## VI.  PREJUDGMENT INTEREST

Mount Carmel argues that the district court should have awarded it prejudgment interest, at minimum, on GuideOne's damages estimate. "State law governs the award of prejudgment interest in diversity cases." *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 172 (5th Cir. 2010) (quoting *Harris v. Mickel*, 15 F.3d 428, 429 (5th Cir. 1994)). Under Mississippi law, an award of prejudgment interest may be available "in cases where the amount due is liquidated when the claim is originally made or where the denial of a claim is frivolous or in bad faith." *Hans Const. Co.*, 653 So. 2d at 264 (quoting *Warwick v. Matheney*, 603 So. 2d 330, 342 (Miss. 1992)); *see also Upchurch Plumbing, Inc. v. Greenwood Utils. Comm'n*, 964 So. 2d 1100, 1116 (Miss. 2007) ("Prejudgment interest has been denied where there is a bona fide dispute as to the amount of damages as well as the responsibility for the liability therefor." (quoting *Microtek Med., Inc. v. 3M Co.*, 942 So. 2d 122, 132 (Miss. 2006))). Here, the amount of damages was not fixed; rather it was highly

No. 15-60915

disputed during a four-day bench trial involving several expert witnesses and a multitude of detailed exhibits.  Further, the district court determined that GuideOne had an arguable basis for denying coverage, and thus its denial was not frivolous or in bad faith.  We conclude the district court did not abuse its discretion in denying prejudgment interest.

## VII.  CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED

No. 15-60915

OWEN, Circuit Judge, concurring:

I concur fully in all but Part III of the court's opinion, and I concur in the judgment. I would resolve whether the termination notice was effective based on the Mississippi statute rather than GuideOne's policy language. The statute provides:

> A cancellation . . . of liability insurance coverage, fire insurance coverage or single premium multiperil insurance coverage is not effective . . . unless notice is mailed or delivered to the insured and to any named creditor loss payee by the insurer not less than thirty (30) days prior to the effective date of such cancellation.[1]

GuideOne concedes throughout its briefing that if this statute is read literally, then the cancellation notice was ineffective. There is no indication that the Mississippi Supreme Court would apply the statute other than as it is written. Accordingly, I agree that the notice of cancellation was ineffective.

---

[1] MISS. CODE. ANN. § 83-5-28(1).